2012 Ark. 386

**VOLTAGE VEHICLES, Appellant**

v.

**ARKANSAS MOTOR VEHICLE COMMISSION, Appellee.**

**No. 12–211.**

Supreme Court of Arkansas.

Oct. 11, 2012.

made errors of fact and law that require reversal. We agree, and we reverse and remand for further proceedings.

In 2008, Rainbow entered into a licensing agreement to carry Voltage's three-wheel electric vehicles. On October 10, 2008, Rainbow purchased six 2008 model-year three-wheel vehicles from Voltage. Rainbow paid $8,750 for each vehicle and paid $800 per vehicle for freight charges, for a total expenditure of $57,300. These vehicles were delivered to Rainbow throughout November and December 2008.

In late September 2009, Rainbow was told that a safety recall had been issued by Voltage regarding its vehicles because of a problem with the braking system. Rainbow was asked to stop selling the vehicles until the defective parts could be repaired or replaced. On October 27, 2009, Rainbow sent a letter to Voltage and to the Commission notifying them of its desire to terminate the licensing agreement. That letter was received by the Commission on November 2, 2009. On November 12, 2009, the Commission wrote a letter to Voltage acknowledging its receipt of Rainbow's notice of termination and setting January 1, 2010, as the effective date of termination, which was sixty days following the November 2 notice.

On April 5, 2010, after Voltage did not repurchase the six 2008 vehicles, Rainbow filed a complaint with the Commission.[1] At a hearing before the Commission on December 15, 2010, Richard Whitten, president and general manager of Rainbow, testified that Rainbow had purchased six 2008–model–year vehicles from Voltage on October 10, 2008, which were received two weeks later, and placed them on the floor for sale. Whitten also testified that after

Rose Law Firm, Little Rock, by: Frank H. Falkner, for appellant.

Dustin McDaniel, Att'y Gen., by: Arnold M. Jochums, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice.

Appellant Voltage Vehicles appeals an order of the Arkansas Motor Vehicle Commission (the "Commission") directing Voltage to repurchase six 2008 electric vehicles from two Arkansas dealers, R & R Cycle, LLC d/b/a Siloam Springs Cycles and Rainbow Cycle & Marine (hereinafter referred to collectively as "Rainbow"). Voltage claims on appeal that the Commission

1. The complaint is not contained in the record, but the Commission's order makes reference to the date it was received.

being informed of the safety recall, he was told that replacement parts would be shipped, but they were never received. Whitten added that he never received any communication from Voltage that 2009 or 2010 models were available as replacements.

On January 27, 2011, the Commission issued its written order making the following findings of fact and conclusions of law: (1) that the Commission received a termination-of-agreement letter from Rainbow on November 2, 2009; (2) that the Commission forwarded the termination letter to Voltage Vehicles on November 12; (3) that the Commission had received a notarized complaint from Rainbow on April 5, 2010, alleging that Voltage had not met the repurchase obligations; (4) that as of the hearing on December 15, 2010, Voltage had not repurchased any inventory from Rainbow; (5) that Voltage was required under Arkansas Code Annotated section 23–112–403(a)(2)(K) to repurchase the six 2008 vehicles in Rainbow's inventory; and (4) that Voltage was required to pay transportation costs and interest incurred on the six vehicles as required by Arkansas Code Annotated section 23–112–403(a)(2)(K) (viii).

On March 1, 2011, Voltage filed a petition for judicial review of the Commission's order in the Pulaski County Circuit Court. That court, after a hearing, issued an order affirming the Commission's decision on November 21, 2011.

Judicial review of the Commission's decision is governed by the Administrative Procedure Act (APA), which provides in part:

> The court may affirm the decision of the agency or remand the case for further proceedings. It may reverse or modify the decision if the substantial rights of the petitioner have been prejudiced be-

cause the administrative findings, inferences, conclusions, or decisions are:

> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the agency's statutory authority;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error or law;
>
> (5) Not supported by substantial evidence of record; or
>
> (6) Arbitrary, capricious, or characterized by abuse of discretion.

Ark.Code Ann. § 25–15–212(h) (Repl. 2002).

On appeal, an appellate court's review is directed, not toward the circuit court's order, but toward the order of the agency, because we have held that administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts to determine and analyze legal issues affecting their agencies. *See, e.g., Ford Motor Co. v. Ark. Motor Vehicle Comm'n,* 357 Ark. 125, 136–37, 161 S.W.3d 788, 795 (2004). Our review of administrative decisions, however, is limited in scope. *Id.* When reviewing such decisions, we uphold them pursuant to the APA if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *Id.*

In determining whether an agency decision is supported by substantial evidence, this court reviews the record to ascertain if the decision is supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The challenging party has the burden of proving an absence of substantial evidence. *Ark. Dep't of Human Servs. v. A.B.,* 374 Ark. 193, 286 S.W.3d 712 (2008). To establish an absence of substantial evidence, the challenging party must demonstrate that the proof before

the administrative tribunal was so nearly undisputed that fair-minded persons could not reach that conclusion. *Id.* In doing so, we review the entire record and give the evidence its strongest probative force in favor of the administrative agency. *Id.* The question is not whether the evidence would have supported a contrary finding but whether it supports the finding that was made. *Id.* It is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord the evidence. *Ford Motor Co.,* 357 Ark. at 136–37, 161 S.W.3d at 795.

To be invalid as arbitrary or capricious, an agency's decision must lack a rational basis or rely on a finding of fact based on an erroneous view of the law. *Id.* Where the agency's decision is supported by substantial evidence, it automatically follows that it cannot be classified as unreasonable or arbitrary. *Id.*

As a result, the APA requires that an administrative adjudication be accompanied by specific findings of fact and conclusions of law. Ark.Code Ann. § 25–15–210(b) (Repl.2002). The statement of facts "must contain all specific facts relevant to the contested issue or issues so that the court may determine whether the [agency] has resolved those issues in conformity with the law." *Holloway v. Ark. State Bd. of Architects,* 352 Ark. 427, 438, 101 S.W.3d 805, 813 (2003) (quoting *Nesterenko v. Ark. Bd. of Chiropractic Exam'rs,* 76 Ark.App. 561, 566, 69 S.W.3d 459, 461 (2002)). We have held that "[t]he purpose of requiring such factual findings is that they benefit the court in the following way: facilitating judicial review; avoiding judicial usurpation of administrative functions; assuring more careful and administrative consideration; aiding the parties in planning for rehearings and judicial review; and keeping an agency within its jurisdiction." *Id.* at 439, 101 S.W.3d at

813. Without the required findings, the reviewing court is left with a difficult, if not impossible, task in determining whether the administrative decision was correct. *See Twin Rivers Health & Rehab, LLC v. Ark. Health Servs. Permit Comm'n,* 2012 Ark. 15, 2012 WL 149807.

Voltage urges on appeal that the Commission made errors of law and fact that require reversal of its order. Specifically, Voltage admits that the buy-back provisions of section 23–112–403(a)(2)(K), which is part of the Arkansas Motor Vehicle Commission Act (the "Act"), required it to repurchase vehicles in Rainbow's inventory that were for the "current model year and one year prior model year." Voltage claims, however, that it is the effective date of the termination of the license agreement, fixed by the Commission as January 1, 2010, that operates to determine the "current model year and one year prior model year" under the Act. It necessarily follows, Voltage maintains, that 2008 vehicles were not within the definition of current model year or one year prior model year because the current model year on January 1, 2010, was 2010, and the previous model year was 2009. Under the plain language of the statute, according to Voltage, it would not be required to repurchase the 2008 vehicles because those 2008 vehicles would not be models for the current or previous model year. Accordingly, Voltage claims that the Commission misinterpreted the plain language of section 23–112–403(a)(2)(K) by concluding that under these circumstances, 2008 vehicles fall within the time frame of current model year or previous model year.

For its retort, the Commission contends that it correctly interpreted section 23–112–403(a)(2)(K) and that there is substantial evidence to support its findings. It acknowledges that its decision to order Voltage to buy back the six 2008 vehicles

from Rainbow required its interpretation of section 23–112–403(a)(2)(K), but it asserts that because the legislature has not defined "current model year and one year prior model year," the Commission is tasked with doing so.

The Commission then cites *Weeks Tractor & Supply Co. v. Arctic Cat Inc.*, 784 F.Supp.2d 642 (W.D.La.2011), to support its conclusion that "current model year" is a term of art for the motor-vehicle industry that may mean calendar year in some contexts and a period of time not coinciding with the calendar year in other contexts. On this point, however, the Commission claims that Voltage failed to put forth any evidence to establish that it follows a traditional sales-model year, which changes in October each year. Rather, it contends that the evidence showed that in November and December 2008, when Rainbow received the vehicles in dispute from Voltage, only the 2008 models were available from Voltage. The Commission, as a result, maintains that based on the only available evidence before it, the 2008 model year had not ended in the fourth quarter of 2008. All of this indicates, the Commission claims, that Voltage did not follow the traditional sales-model year beginning in October. Hence, the Commission advances the argument that when Rainbow announced its intention to terminate the agreement on November 2, 2009, in the fourth quarter of 2009, the current model year was 2009 and the previous model year was 2008. Under these facts, the Commission asserts that it was correct to order Voltage to buy back the six 2008 model vehicles.

When reviewing issues of statutory interpretation, we are mindful that the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning. *Cave City Nursing Home, Inc. v. Ark. Dep't of Human Servs.*, 351 Ark. 13, 89 S.W.3d 884 (2002). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Id.* A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.* When a statute is clear, we give it its plain meaning, and this court will not search for legislative intent; rather, that intent will be gleaned from the plain meaning of the language used. *Id.* This court is very hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent. *Id.*

We have further held that it is a rule of statutory construction that the manner in which a law has been interpreted by executive and administrative officers is to be given due consideration and will not be disregarded unless it is clearly wrong. *Id.* An administrative interpretation by a state agency is to be regarded as highly persuasive. *Id.* Where the statute is not ambiguous, however, this court will not interpret it to mean anything other than what it says. *Id.*

The relevant statutory provision under the Act at issue in the instant case, reads in pertinent part:

(a) It shall be unlawful:

. . .

(2) For a manufacturer, distributor, distributor branch or division, or factory branch or division, or an officer, agent, or other representative thereof:

. . .

(K) Notwithstanding the terms of any franchise agreement, to fail to pay to a dealer or any lienholder in accordance

with their respective interests *after the termination of franchise:*

. . .

(i) The dealer cost plus any charges by the manufacturer, distributor, or a representative for distribution, delivery, and taxes, less all allowances paid to the dealer |₉by the manufacturer, distributor, or representative for new, unsold, undamaged, and complete motor vehicles of *current model year and one (1) year prior model year* in the dealer's inventory; . . . .

Ark.Code Ann. § 23–112–403(a)(2)(K)(i) (Supp.2011) (emphasis added).[2]

A separate provision of the Act gives guidance as to the effective date when a franchise, sales, or service agreement may be terminated. That date must be at least sixty days after notice of termination:

(v)(a) If the franchise agreement, sales and service agreement, or bona fide contract is terminated or cancelled, the terminating or canceling party shall notify the commission of the termination or cancellation of the franchise or selling agreement at least sixty (60) days before the effective date.

Ark.Code Ann. § 23–112–403(a)(2)(C)(v)(a) (Supp.2011).

Accordingly, the date used by the Commission for the termination of the license agreement is critical to a decision on what constitutes a "current model year and one year prior model year" under the Act. As already referenced in this opinion, based on the language in section 23–112–403(a)(2)(C)(v)(a), a termination is not effective until at least sixty days have passed from the time the canceling party (dealer or manufacturer/distributor) notifies the Commission of its intent to terminate.

The Commission acknowledged this sixty-day requirement in its November 12, 2009 correspondence with Rainbow and Voltage by setting the effective date of termination as January 1, 2010, which was sixty days after notice had been given. However, in its written order concluding that Voltage was required to repurchase |₁₀Rainbow's 2008 inventory, the Commission referred only to the date it received Rainbow's notice of intent to terminate the license agreement (November 2, 2009) and the date the Commission forwarded that notice to Voltage (November 12, 2009). The Commission neglected to make any reference to the date it fixed as the effective date of termination, January 1, 2010, or to make any finding as to what was the current model year at the time of that effective date of termination. Without these crucial findings, the Commission has manifestly failed to support its conclusion that Voltage is required under the statute to repurchase Rainbow's 2008 inventory and pay associated costs with sufficient relevant facts to facilitate this court's review. *See Twin Rivers Health & Rehab,* 2012 Ark. 15, 2012 WL 149807.

To repeat in part, the only evidence put forth in this case before the Commission was that when Rainbow made its first purchase of vehicles from Voltage in October 2008, Voltage was offering 2008 model-year vehicles. No evidence was presented as to when Voltage began offering 2008 model vehicles or when Voltage ceased offering 2008 model vehicles. Suffice it to say, the Commission could have found that on January 1, 2010, the current model year was 2010, 2009, or possibly still 2008. But, again, the Commission made no factual finding with regard to the correct termi-

2. Although the statutory provision refers to the termination of a franchise agreement, the definition of "franchise" within the Act en-compasses what these parties referred to as a "licensing agreement." Ark.Code Ann. § 23–112–103(14) (Repl.2004).

nation date or the current model year tied to that date.

In short, because the Commission failed in its obligation to make sufficient findings of fact relevant to the contested issue of what constituted the current model year, this court cannot determine whether the Commission had resolved that issue in conformity with the law. Accordingly, we must reverse and remand the matter to the circuit court with directions to remand it to the Commission to make findings based on the correct termination date.

⌊11Reversed and remanded.