2013 Ark. 37

**ARKANSAS PUBLIC EMPLOYEES RETIREMENT SYSTEM,**
Appellant

v.

**Jo West TAYLOR, Appellee.**

No. 12–252.

Supreme Court of Arkansas.

Feb. 7, 2013.

Frank J. Wills, III, for appellants.

Chisenhall, Nestrud & Julian, P.A., by: Denise Reid Hoggard, Little Rock, and Heather Zachary, for appellee.

JOSEPHINE LINKER HART, Justice.

After the elected treasurer for Garland County, Jo West Taylor, had received monthly retirement checks for more than a year and a half from the Arkansas Public Employees Retirement System (APERS), APERS Executive Director Gail Stone terminated Taylor's benefits. The decision to stop paying benefits to Taylor followed an internal investigation of roughly 300 elected officials who were fully employed yet receiving retirement checks—colloquially referred to as "double dipping." Taylor appealed Stone's decision to the APERS Board of Trustees (the Board), where it was upheld. The Board found that Taylor had not terminated her employment and her benefits were forfeited pending her

fulfillment of the termination requirement. The Board also ruled that Taylor was ineligible to receive additional service credits after the time she began receiving benefits. Taylor appealed these findings to the Pulaski County Circuit Court. The circuit court affirmed the Board's determination that Taylor had failed to terminate her employment, but reversed the Board's finding that she was ineligible to receive additional service credit.

The Board appeals and Taylor cross-appeals from the circuit court's order. The Board argues that its opinion should be affirmed because (1) its determination that Taylor did not terminate her employment is supported by substantial evidence; (2) its determination that Taylor's failure to terminate her employment did not revoke her retirement and entitle her to a new benefit package was a correct interpretation of APERS retirement statutes and regulations; and (3) its determination that Taylor's failure to terminate her position after she retired required her to forfeit her retirement-benefit payments until she terminated her employment is supported by substantial evidence and was the correct interpretation of APERS retirement statutes and regulations. Taylor, in her cross-appeal, argues that (1) the Board's determination that she did not terminate her employment was arbitrary and capricious; (2) the Board's determination that she was not entitled to service credits for time she worked was erroneous; and (3) she did not forfeit her right to receive both retirement benefits and service credits. We affirm the Board in all respects.

We assumed jurisdiction because this case presents issues of first impression that are of substantial public interest and also involves the construction of statutes and APERS regulations. Ark. Sup. Ct. R. 1–2(b)(1), (4) & (6) (2012). Although a circuit court ruled in this case, our review is directed, not toward the circuit court's order, but toward the order of the administrative agency. *Voltage Vehicles v. Ark. Motor Vehicle Comm'n*, 2012 Ark. 386, 424 S.W.3d 281. Judicial review of administrative agencies is governed by the Arkansas Administrative Procedure Act, which limits our inquiry to the question of whether the administrative agency's decisions violate constitutional or statutory provisions; exceed the agency's statutory authority; involve an unlawful procedure; are the result of an error of law; are not supported by substantial evidence; or are arbitrary, capricious, or characterized by abuse of discretion. Ark.Code Ann. § 25–15–212(h) (Repl.2002).

In our review, we consider the entire record and give the evidence its strongest probative force in favor of the administrative agency's decision. *Voltage Vehicles, supra.* Accordingly, we do not consider whether the evidence would have supported a contrary finding but whether it supports the finding that was made. *Id.* It is the province of the administrative agency to believe or disbelieve any witness and to decide what weight to accord the evidence. *Id.* Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* Establishing the absence of substantial evidence requires that the challenging party demonstrate that the proof before the administrative agency was so nearly undisputed that fair-minded persons could not reach the agency's conclusion. *Id.* For us to invalidate an administrative agency's order as arbitrary or capricious, we must hold that an agency's decision lacked a rational basis or relies on a finding of fact based on an erroneous view of the law. *Id.* Even so, where the administrative agency's decision is supported by substantial evidence, it automat-

ically follows that it cannot be classified as unreasonable or arbitrary. *Id.* Finally, as with any appeal, we review issues of statutory construction de novo. *Arkansas State Highway & Transp. Dep't v. Lamar Advantage Holding Co.*, 2011 Ark. 195, 381 S.W.3d 787. However, we give great deference to the administrative agency's interpretation of a statute or regulation that the agency is charged with administering. *Id.* We will not overrule the agency's interpretation unless it is clearly wrong. *Id.*

Taylor testified at the September 29, 2010 hearing that she was the elected Garland County Treasurer, having served in that position for the last eighteen years. Prior to that, she was chief deputy county treasurer for ten years and deputy tax collector for seven years. In May 2008, Taylor was unopposed for reelection. Around this time, she began to consider retiring and returning to office so that she could collect a monthly annuity payment. According to Taylor, she was told by APERS retirement counselors that all she had to do was go off the county payroll for ninety days before resuming her duties. However, she admitted that before she spoke with any APERS representative, she had decided that "terminate employment" simply meant going off the payroll for ninety days. In fact, the only steps that she took to "terminate" her employment were to instruct the county clerk to take her off the county payroll and to begin paying for her health insurance. Effective September 1, 2008, Taylor began receiving retirement benefits.

Taylor admitted that after she had herself removed from the payroll and began to personally pay for her health insurance, she continued to function as the county treasurer. She signed official papers and conducted county business. She never submitted a letter of resignation or physi-cally vacated her office. Taylor admitted that she did not make the Garland County Quorum Court aware that she had terminated her employment, but asserted that it was the county judge's responsibility. She conceded that the quorum court did not declare a vacancy, and no one was appointed to fill Taylor's unexpired term.

Contrary to Taylor's claims that she was following the instructions of APERS personnel, APERS retirement counselors Shunika Bryant and Cheryl Wilburn adamantly denied that they told Taylor that all she had to do to terminate her employment was "go off the payroll." Bryant noted that in the "comments section" of the retirement checklist that she gave to Taylor, there was a handwritten notation that stated, "Will need to furnish letter of resignation from treasurer's office." Pam Stroud, supervisor to Bryant and Wilburn, stated that all APERS members receive a handbook informing them that "[y]ou must terminate employment to be eligible to receive monthly benefits," and further states that "[y]ou are considered terminated only after you end all employment relationships with all APERS-covered employers for at least thirty or ninety days." Stroud further noted that the handbook specifies that a retiree will not become a member of APERS again and cannot earn additional service credit. Like Bryant and Wilburn, Stroud denied that she or any other APERS retirement counselor regularly tell potential retirees that all they have to do to terminate employment is "go off the payroll." Stroud noted that the APERS publication "Applying for Retirement Benefits" states,

Your employment with an APERS participating employer must end before you can begin receiving a retirement annuity. To be considered retired, you must end your employment, and you must not return to work for an APERS partici-

pating employer for … ninety days after the effective date of your retirement. Stroud further noted that employees cannot receive service credit if they are not being paid.

APERS internal auditor Craig Blackard testified that he became involved with "double-dipping matters" after an inquiry from State Representative Allen Kerr prompted the attorney general to issue an opinion regarding the steps necessary to terminate employment in order to receive public-retirement benefits. The September 1, 2009 attorney general opinion sparked considerable interest in the press and in turn, eventually spawned an investigation of recently "retired" public officials by APERS. Blackard reported the results of his investigation of Taylor to APERS Executive Director Gail Stone.

Stone testified that she concluded that Taylor was improperly receiving retirement benefits. By letter dated March 8, 2010, from APERS's general counsel, APERS ordered repayment.[1] She had no information concerning whether Taylor repaid the benefits, but stated that even if Taylor had repaid the benefits, there is no provision in Arkansas law that would allow Taylor to be reinstated into the system.

In her case, Taylor first presented testimony from Patty Hill, formerly employed with the Crawford County Clerk's Office. Hill stated that at a retirement seminar, Pam Stroud stated "several times" that to retire, you had to be off the payroll for the required separation period. Hill, however, did not recall Stroud using the phrases "terminate employment" or "terminate the job" in connection with going off the payroll.

Eddie Jones testified that he had been an elected county official for twenty-six

years and served as executive director of the Association of Arkansas Counties for three and a half years. He claimed that he had heard both Stroud and Gail Stone use the phrase "off the payroll" as the definition of termination. He conceded, however, that they might have used it as a "catch phrase or colloquial phrase." He also admitted that he was not aware of any other county officials who did not resign from their position or vacate their office and merely went off the payroll for ninety days for retirement.

Mark McElroy testified that he was the Desha County judge and had served in that position for eighteen years. He stated that when the county assessor and the circuit clerk took retirement by just "going off the payroll," he inquired of APERS whether the county government had to declare a vacancy or appoint a replacement. The APERS employee, whose name he could not recall, informed him that neither was a requirement.

Garland County Judge Larry Williams testified that in the spring of 2008, Taylor and two other county officials informed him that they intended to "retire" by simply going off the payroll. He realized that he was eligible for retirement as well, but decided not to employ the same tactic. He contacted Eddie Jones and inquired whether other elected officials had legally retired by simply going off the payroll. According to Williams, Jones confirmed that it was true. He admitted that he did not put the matter of Taylor's retirement before the quorum court. Williams further testified that he checked with the county judges in Desha, Jefferson, Lafayette, Calhoun, Pope, and Union Counties. Williams concluded that none of the public officials in those counties had effected

---

1. It was subsequently determined that the Board's collection efforts were time-barred by Arkansas Code Annotated section 24–4–207 (Supp.2006).

their retirement by simply going off the payroll. However, Williams confirmed that while Taylor was off the payroll, she went to her office every day, and "did the normal job she would have done if she had stayed on the payroll."

Garland County Clerk Tammy Lambert testified that as a department head, Taylor was responsible for telling her who was on the payroll, and she followed Taylor's instructions by removing Taylor from the payroll. Nonetheless, she noted that Taylor signed correspondence and documents for the county during the months of September, October, and November of 2008.

Larry Fratesi, the Jefferson County Assessor, testified that he had served on the APERS Board for nineteen years. He stated that to legally retire, one did not have to resign, but "just" be off the payroll. He asserted that while he was Chairman of the APERS Board, he took retirement from an elected position as Jefferson County Assessor. Prior to doing so, he asked Gail Stone if there was a statute that prohibited him from retiring prior to the expiration of his current term and returning at the start of his next term. According to Fratesi, Stone opined that it was legal. Fratesi noted that he did not submit a letter of resignation. However, Fratesi admitted that when he went off the payroll for ninety days, he also vacated the premises, returned county property, surrendered his keys, and performed no official duties.

After the hearing, the Board upheld the executive director's determination that Taylor had failed to terminate her employment. Subsequently, the Board determined that there was no legal precedent that would allow Taylor to rejoin the system and begin accruing additional service credits. Taylor timely appealed the Board's decision to the Pulaski County Circuit Court. In the circuit court filing, Taylor and others also asked for declaratory judgment and money damages from members of the Board. The circuit court upheld the Board's finding that Taylor had failed to terminate her employment, but found that she continued to accrue service-time credit. The circuit court also granted the Board's motion to dismiss without prejudice Taylor's other causes of action.

As noted previously, we have before us both the Board's direct appeal and Taylor's cross-appeal. Because the parties' points on appeal essentially dovetail, we will consider them together.

The Board first argues that its determination that Taylor did not terminate her employment is supported by substantial evidence. Arkansas Code Annotated section 24–4–520(a) (Supp.2006) requires that a member of APERS "terminate covered employment" as a prerequisite to receiving retirement benefits. The Board asserts that Taylor's own testimony concerning her activities in the Garland County Treasurer's Office constitutes substantial evidence that she had not terminated her employment. It cites *Jackson v. City of Blytheville Civil Service Commission*, 345 Ark. 56, 43 S.W.3d 748 (2001), for the proposition that "terminate" in the retirement context means to bring to an end. Further, it contends that section 24–4–520(b) reinforces this interpretation because it speaks of a return to employment after a set period of termination.

Taylor counters, arguing that the Board's determination that she did not terminate her employment was arbitrary and capricious. She contends that the statutory requirement that she "terminate covered employment" is satisfied when she ceases to draw compensation. Citing Arkansas Code Annotated section 24–4–

101(17)(B)(ix) (Repl.2006), Taylor asserts that to become a covered employee, that person must earn a rate of pay that is "substantially gainful," which subparagraph (ix)(a)(2) defines as the federal minimum wage for the year. Further, citing *Armour & Co. v. Rice*, 199 Ark. 89, 134 S.W.2d 529 (1939), she argues that the employer/employee relationship does not exist where there is no agreement to pay wages. Additionally, Taylor asserts that APERS had previously interpreted the statutory requirement of terminating employment to mean only that an APERS member forgo wages and compensation to be eligible, which makes the Board's decision with regard to her arbitrary and capricious.

We hold that substantial evidence supports the Board's determination that Taylor failed to terminate her covered employment. Taylor admitted that, with the exception of telling the county clerk to remove her from the payroll, she continued to function as the Garland County Treasurer. She continued to go to her office, sign official documents, and despite being told to furnish a letter of resignation to APERS, she failed to do so. Likewise, Taylor did not submit a letter of resignation to the Garland County Quorum Court. While we decline to set out all the steps required to legally terminate employment for the purpose of drawing public retirement, we affirm the Board's determination that the steps that Taylor did take failed to satisfy the statute.

We likewise reject Taylor's contention that the Board's determination was arbitrary and capricious. While she presented testimony from several public officials who had drawn public-retirement benefits and a government salary, she presented no evidence that APERS had allowed a public official to retire without an actual break in service. We are also not persuaded by

Taylor's reasoning that if earning sufficient wages is required to enroll an employee in APERS, forgoing wages is enough to terminate employment for retirement purposes. By focusing solely on earning or failing to earn sufficient wages, Taylor does not take into account that more is required to terminate employment. Particularly, we note that subparagraph (b) expressly contemplates a retiree leaving a covered position and a disqualifying early "return" to employment in a covered position. We hold that the Board's decision was not based on an erroneous view of the law and it is solidly grounded in substantial evidence. Accordingly, we hold that it is not arbitrary and capricious. *See Voltage Vehicles, supra.*

The Board next argues that its finding that Taylor's failure to terminate her employment did not revoke her retirement and entitle her to a new benefit package was a correct interpretation of APERS retirement statutes and regulations. Arkansas Code Annotated section 24-4-304(b) (Supp.2011) expressly states that upon a member's retirement, he or she ceases to be a member of APERS. Further, subsection (b)(2) states that except for a situation not relevant to the case at bar, once a member retires, he or she is precluded from again becoming a member of APERS. The Board further notes that the only way a member can revoke his or her retirement is pursuant to APERS regulation 207, which limits such action to situations where the member notifies APERS prior to retirement or after retirement if the member notifies APERS in writing and returns the first benefit payment on or before the fifteenth calendar day of the month during which the first benefit payment was received. Accordingly, the Board argues that Taylor's failure to terminate her employment, which made her ineligible to receive benefits, did

not prevent her exit from the APERS system, or revoke her retirement.

Taylor argues that once APERS "reversed its approval of her retirement and found she had ineffectively retired," it was required by law to credit her with service credits. She urges us to accept the "compelling logic" of the circuit court's reasoning that she either legally retired or she did not legally retire, and if she did not legally retire, then she remained in the system and continued to accrue service credits. She acknowledges that section 24–4–520(d) states that persons failing to terminate their employment forfeit their benefits until the termination requirement is met; however, she asserts that service credits are not benefits.

▮ Contrary to Taylor's argument, this point does not turn on whether she legally retired. Rather, it turns on her election to retire, her receipt of retirement payments, and her failure to avail herself of the only process provided by statute whereby she could have revoked her retirement. Under APERS regulations, for Taylor to revoke her retirement, she was required to notify APERS that she was revoking her retirement and to return her first month's benefit. 075–00–001 Ark.Code R. 207 (Weil 2001). We agree with the Board that under these circumstances, Taylor's election of retirement was irrevocable. Moreover, it is wholly consistent with our statutory scheme that Taylor's benefits are forfeited pending her satisfying the requirement in section 24–4–520 that she terminate her employment. In statutory construction, we are obligated to interpret the various sections of our code in a way that harmonizes with other related sections. *Searcy Farm Supply, LLC v. Merchants & Planters Bank,* 369 Ark. 487, 256 S.W.3d 496 (2007). Moreover, we give effect to the specific statute over the general. *Id.* Ac-

cordingly, were we to look at section 24–4–520 in isolation, we might see the "logic" in Taylor's contention that an ineffective retirement predicated on her failure to terminate her employment left her in the same position she was in before she attempted retirement. However, the more specific statute, section 24–4–304, precludes such an interpretation. *See Searcy Farm Supply, LLC, supra.*

▮ Finally, the Board argues that its determination that Taylor's failure to terminate her position after she retired required her to forfeit her retirement-benefit payments until she terminated her employment is supported by substantial evidence and was the correct interpretation of APERS retirement statutes and regulations. It asserts that there is no question that Taylor did not terminate her employment after she retired. Further, the Board contends that its interpretation of section 24–4–520(d) is correct—that is, Taylor was ineligible to receive benefits until she terminated her employment. It did not interpret "forfeit" to mean that it put Taylor back in the same position she would have been in had she not retired. Its interpretation was calculated to honor the legislature's intent that electing to retire be irrevocable.

Taylor asserts that there is nothing in section 24–4–520 that requires or allows APERS to deny a member both service credits and annuity payments. She asserts that the statute is more properly read to require termination of covered employment as a "prerequisite" to retirement, and the forfeiture provision relates to potential benefits if the employee returns to covered employment prior to the expiration of the appropriate time frame.

As we have discussed previously, under section 24–4–304, an election to retire, subject only to a very specific process for revoking this election, prohibits a mem-

ber from rejoining APERS. Substantial evidence supports the Board's conclusion that Taylor elected to retire effective September 1, 2008. Her failure to terminate her employment did not mean that she was not retired, only that she was required to forfeit her retirement benefits until she fulfilled the termination requirement. We affirm the Board on this point as well.

Affirmed in part; reversed in part; remanded with instructions to reinstate the Board's decision.

HOOFMAN, J., not participating.