SLIP OPINION

Cite as 2013 Ark. 429

# SUPREME COURT OF ARKANSAS

No. CV-12-925

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF L.C. TAYLOR, DECEASED; RONNIE TAYLOR, AS SPECIAL PERSONAL REPRESENTATIVE OF THE ESTATE OF L.C. TAYLOR, DECEASED, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF L.C. TAYLOR<br>**APPELLANT**<br><br>V.<br><br>MCSA, LLC; COURTYARD REHABILITATION AND HEALTH CENTER, LLC; JEJ INVESTMENTS, LLC; UNION ASSETS, LLC; SUMMIT HEALTH RESOURCES, LLC; PROCARE THERAPY SERVICES, LLC; JOHN PONTHIE; ROSS M. PONTHIE; AND MARK A. THOMPSON<br>**APPELLEES** | **Opinion Delivered** October 31, 2013<br><br>APPEAL FROM THE UNION COUNTY CIRCUIT COURT PROBATE DIVISION<br>[NO. PR-2009-52-2]<br><br>HONORABLE MICHAEL R. LANDERS, JUDGE<br><br><u>REVERSED AND REMANDED</u>. |

## KAREN R. BAKER, Associate Justice

This appeal stems from the death of L.C. Taylor and the appointment of a special personal representative of his estate. L.C. died on February 2, 2009. On March 16, 2009, the Union County Circuit Court–Probate Division appointed L.C.'s son, Bobby Taylor, special personal representative of the estate for the limited purpose of investigating and prosecuting all claims which the estate may pursue having arisen out of nursing-home abuse. On June 3, 2010, on behalf of his father's estate, Bobby sued the appellees in a wrongful-death action in the Union County Circuit Court. The wrongful-death action is a

companion case to this probate appeal, Case No. CV-13-12. The appellees in both cases are MCSA, LLC; Courtyard Rehabilitation and Health Center, LLC; JEJ Investments, LLC; Union Assets, LLC; Summit Health Resources, LLC; Procare Therapy Services, LLC; John Ponthie; Ross M. Ponthie; and Mark A. Thompson (the appellees will be collectively referred to as "MCSA").

On June 8, 2011, Bobby was deposed in the wrongful-death action and for the first time, revealed that he was a convicted felon. The parties agreed that, pursuant to Ark. Code Ann. § 28-48-101(b)(3) (Repl. 2004), a convicted felon is not qualified to serve as a special personal representative. Accordingly, on July 15, 2011, Bobby moved to substitute Ronnie Taylor, another son of L.C. Taylor's, as special personal representative. On July 28, 2011, the court removed Bobby and substituted Ronnie as the special personal representative for the estate.[1]

On August 1, 2011, MCSA filed a motion to intervene in the probate case, filed a motion requesting that the probate court vacate the March 16, 2009 order appointing Bobby, and challenged Ronnie's substitution as a special personal representative. MCSA sought to intervene asserting that the appointment issue would determine whether Bobby's wrongful-death claim was timely filed. MCSA also asserted that Bobby's appointment was invalid thereby invalidating Ronnie's substitution. On August 31, 2011, the probate court allowed MCSA to intervene in the probate case and denied MCSA's challenge to Ronnie's

---

[1]On August 24, 2011, the Union County Circuit Clerk issued letters of special administration to Ronnie.

appointment. The probate court also denied MCSA's request to vacate its order appointing Bobby as special personal administrator, finding the issue moot because it had appointed Ronnie.

On May 8, 2012, MCSA filed a motion for reconsideration again challenging the appointment of Ronnie, and requested that the probate court vacate its March 16, 2009 order appointing Bobby as special personal administrator. On July 11, 2012, the probate court held a hearing on the motion for reconsideration, and on July 12, 2012, vacated its March 16, 2009 order appointing Bobby. The probate court found that its order was invalid from its inception and that there was no valid order appointing Bobby as special personal representative. From that vacation order, Ronnie appeals and presents one issue, whether the circuit court erred when it found that the March 16, 2009 order was void ab initio. Stated differently, the question is whether the circuit court erred in finding that the order was void and not voidable. This court has jurisdiction pursuant to Ark. Sup. Ct. R. 1-2(b)(5)– (6) (2013) as the case presents a significant issue in need of clarification or development of the law.

This court reviews probate proceedings de novo but will not reverse the decision of the probate court unless it is clearly erroneous. *Seymour v. Biehslich*, 371 Ark. 359, 266 S.W.3d 722 (2007). A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left on the entire evidence with the firm conviction that a mistake has been committed. *Id.* Furthermore, while we will not overturn the probate judge's factual determinations unless they are clearly erroneous, we are free in a de novo

SLIP OPINION

review to reach a different result required by the law. *Standridge v. Standridge*, 304 Ark. 364, 803 S.W.2d 496 (1991).

The issue on appeal requires us to construe the relevant statutes, Ark. Code Ann. §§ 28-1-115(b) and 28-48-105(b) (Repl. 2004). The question of the correct application and interpretation of an Arkansas statute is a question of law, which this court decides de novo. *Broussard v. St. Edward Mercy Health Sys., Inc.*, 2012 Ark. 14, 386 S.W.3d 385. The basic rule of statutory construction to which all interpretive guides must yield is to give effect to the intent of the General Assembly. *Falcon Cable Media LP v. Ark. Pub. Serv. Comm'n*, 2012 Ark. 463, at 3, ___ S.W.3d ___, ___. "When reviewing issues of statutory interpretation, we are mindful that the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning." *Voltage Vehicles v. Ark. Motor Vehicle Comm'n*, 2012 Ark. 386, at 4, ___ S.W.3d ___, ___. We construe the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. *Id.* "When a statute is clear, we give it its plain meaning, and this court will not search for legislative intent; rather, that intent will be gleaned from the plain meaning of the language used." *Id.* at 4, ___ S.W.3d at 8. It is for this court to decide what a statute means, and we are not bound by the probate court's interpretation. *Chase Bank USA, N.A. v. Regions Bank*, 2013 Ark. 129, ___ S.W.3d ___.

At issue here is the probate court's July 12, 2012 order, which provides in pertinent part as follows:

Said Order of appointment [of Bobby Taylor] shall be and is hereby vacated pursuant to A.C.A. § 28-1-115 as the Order was, from its inception, invalid. IT IS

THEREFORE ORDERED and ADJUDGED that the . . . Order of March 16, 2009, was invalid and that there was no valid Order appointing Bobby Taylor as Personal Representative.

The parties agree that the probate court was vested with the power to vacate its order appointing Bobby, but disagree as to the effect of the vacation of the order. Ronnie asserts that Bobby's acts prior to his removal remain valid, and MCSA takes the position that all of Bobby's acts from his appointment forward are void.

The two applicable statutes from our Probate Code are Ark. Code Ann. §§ 28-1-115(b) and 28-48-105(b) (Repl. 2004).

First, Ark. Code Ann. § 28-1-115, "Orders and rehearings" provides in pertinent part:

(a) For good cause and at any time within the period allowed for appeal after the final termination of the administration of the estate of a decedent or ward, the court may vacate or modify an order or grant a rehearing.

(b) No vacation or modification under this section shall affect any act previously done or any right previously acquired in reliance on such an order or judgment.

Second, the Probate Code addresses the removal of a personal representative in Ark. Code Ann. § 28-48-105(b), "Removal Generally." Subsection (b) provides as follows:

(b) The removal of a personal representative after letters have been duly issued to him or her does not invalidate his or her official acts performed prior to removal.

Ronnie contends that the language of § 28-48-105(b) is clear, and as applied to Ronnie's case would render Bobby's appointment voidable, leaving Bobby's acts from his appointment until his removal valid and in effect. Ronnie further contends that to find otherwise would require this court to ignore the statute's clear language.

MCSA responds that the probate court's interpretation of Ark. Code Ann. § 28-1-

115(b) should be affirmed because the initial appointment was invalid thereby invalidating the appointment in its entirety. MCSA relies on Ark. Code Ann. § 28-48-101(b)(3), which provides that "no person is qualified to serve as domiciliary personal representative who is a convicted and unpardoned felon," and asserts that the probate court did not strictly comply with this statute and therefore exceeded its jurisdiction. MCSA contends that because Bobby was disqualified from the initial filing, this court does not need to reach the effect of his removal because he was unqualified to ever serve. Stated differently, Bobby was never qualified, his appointment was invalid, and therefore any act he performed prior to his removal on July 28, 2011, is a nullity.

We now turn to our interpretation of the applicable statutes. With our rules of statutory construction in mind, in reviewing Ark. Code Ann. §§ 28-1-115(b) and 28-48-105(b), we hold that the probate court erred. Ark. Code Ann. § 28-1-115(b) plainly and unambiguously states that "no vacation or modification under this section shall affect any act previously done or any right previously acquired in reliance on such an order or judgment." Additionally, Ark. Code Ann. § 28-48-105(b) plainly and unambiguously states "[T]he removal of a personal representative after letters have been duly issued to him or her does not invalidate his or her official acts performed prior to removal." These two statutes proscribe the same language: the removal of a personal representative or a vacation of an order does not invalidate or affect any acts prior to the removal of the personal representative or the vacation of the order. We also note that Ark. Code Ann. § 28-48-102, "Letters–Issuance–Form," of the Probate Code also provides that Bobby's acts prior to his removal remain valid.

6

Subsection (d)(2) states that "the order appointing the administrator empowers the administrator to act for the estate, and any act carried out under the authority of the order is valid."

Although MCSA urges this court to hold that all of Bobby's acts are void, we find that this interpretation would require us to ignore the plain language of our statutes. Further, we note that MCSA's argument hinges on its position that Bobby's appointment was invalid from the initial date of appointment because he was an unpardoned felon and unqualified to serve thereby voiding all of his acts. However, the flaw with this argument is, from the record before the court, there is no evidence that either the court or the parties, or even Bobby was aware that he was unqualified to serve as special personal administrator for his father's estate. Thus, at the time of Bobby's appointment, the court acted within its jurisdiction and appointed Bobby in compliance with Ark. Code Ann. §§ 28-48-101 to -103. Here, the knowledge of the need for removal did not occur until Bobby's deposition on June 8, 2011, when it was first revealed that Bobby was unqualified to serve. Thereafter, Ronnie was substituted as the special personal representative. However, this substitution does not invalidate or affect the probate court's jurisdiction to initially appoint Bobby, it simply removes him as the representative.

We also find support for our statutory interpretation from our holding in *Nickles v. Wood*, 221 Ark. 630, 255 S.W.2d 433 (1953). In *Nickles*, we addressed whether the acts of the former special administrator were valid. In that case, there was an automobile accident between Nickles and Stein. Nickles died in the accident, and Stein and his wife were injured.

7

On August 29, 1952, pursuant to Ark. Stats. § 66-2210 (1949) (currently Ark. Code Ann. § 28-48-103, "Appointment of Special Administrators"), Stein petitioned the probate court to appoint a special administrator to Nickles's estate to serve a summons and to defend a cause of action arising from the accident. The probate court granted the petition, and Stein served Nickles's special administrator on that same date with a suit for damages in circuit court. Approximately two weeks later, on September 12, 1952, Nickles's father filed a petition with the probate court to be appointed general administrator of his son's estate. The probate court granted the petition and revoked the August 29 appointment of the special administrator. Nickles's father then filed a motion in the circuit court action to quash the summons in the suit for damages from the accident. The circuit court denied the motion to quash. Nickles filed a writ of prohibition with this court, asserting that the probate court's appointment of the general administrator invalidated the special administrator's appointment; therefore service in the civil action was not valid and the circuit court lacked jurisdiction over the case. We dismissed the writ, and we affirmed the circuit court's finding that the cancellation of the special–administrator appointment did not affect the validity of the service of the summons that had previously been served. Citing Ark. Stats. § 62-2203 (currently Ark. Code Ann. § 28-48-105), we held that the acts of the special administrator prior to the revocation were valid.

Although MCSA contends that *Nickles* is not on point because we did not address an unqualified representative, we disagree. In *Nickles*, we addressed the effect of the revocation of a special personal representative and the validity of the acts of the revoked representative.

8

Accordingly, we find that *Nickles* supports our statutory interpretation that the acts of a revoked special personal representative are not void.[2]

Therefore, in accordance with our interpretation of Ark. Code Ann. §§ 28-1-115(b) and 28-48-105(b), we hold that Bobby's acts as a special personal representative were valid until the date of his removal as special personal representative, July 28, 2011. Accordingly, the probate court erred by finding that the order of appointment was void ab initio.

Reversed and remanded.

HART, J., not participating.

*Murphy, Thompson, Arnold, Skinner & Castleberry*, by: *Tom Thompson* and *Casey Castleberry*; *Davidson Law Firm*, by: *Scott Davidson*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Munson, Rowlett, Moore & Boone, P.A.*, by: *Timothy L. Boone*, *Sarah E. Cullen*, and *Beverly A. Rowlett*; and *Anderson, Murphy & Hopkins, LLP*, by: *Jason Campbell*, for appellees.

---

[2]We also note that although both parties cite to *Edwards v. Nelson*, 372 Ark. 300, 275 S.W.3d 158 (2008) and *Kelly v. Estate of Edwards*, 2009 Ark. 78, 312 S.W.3d 316, we do not find these cases applicable to the case before us. In those cases, we did not reach the issue presented here but disposed of both cases on other grounds.