SLIP OPINION

Cite as 2014 Ark. 487

# SUPREME COURT OF ARKANSAS

No. CR–14–380

ROBERT FRIAR

PETITIONER

V.

HONORABLE HAROLD S. ERWIN,
JACKSON COUNTY CIRCUIT
COURT, CRIMINAL DIVISION

RESPONDENT

**Opinion Delivered** November 20, 2014

PETITION FOR WRIT OF
MANDAMUS OR, IN THE
ALTERNATIVE, WRIT OF
CERTIORARI

[NO. CR-2013-75]

HONORABLE HAROLD S. ERWIN,
JUDGE

<u>WRIT OF MANDAMUS DENIED;
WRIT OF CERTIORARI GRANTED
IN PART; DENIED IN PART</u>.

**KAREN R. BAKER, Associate Justice**

The present case stems from one count of capital murder, two counts of attempted capital murder, seven counts of terroristic acts, and one count of possession of a firearm by certain persons filed against the petitioner, Robert Friar, in Jackson County Circuit Court, Arkansas, on April 17, 2013. The incident that gives rise to the charges occurred on February 27, 2013. If found guilty, the State intends to seek the death penalty. On March 5, 2014, pursuant to Ark. Code Ann. § 5-2-305, the State filed a motion for an order for a mental-health evaluation of Friar. On March 10, 2014, Friar responded to the motion objecting to the request asserting that Friar was not raising "mental disease or defect as a defense, nor will [Friar] claim a lack of fitness to proceed," but would seek "to bar the State from seeking the

SLIP OPINION

death penalty due to his mental retardation."[1]  On April 17, 2014, the circuit court, the

Respondent here, held a hearing on the motion and orally ruled that the circuit court would

grant the State's motion and would enter orders for the examinations.  On April 23, 2014,

Friar filed a motion to reconsider the orders for mental–health evaluations of Friar.  On April

25, 2014, the circuit court entered two separate orders, an "Order for Fitness–To–Proceed

Examination of Defendant" and an "Order for Criminal Responsibility Examination of

Defendant."  From those orders, on April 29, 2014, Friar filed a petition for writ of

mandamus and emergency petition for stay or, in the alternative, for expedited consideration

with this court.  On May 1, 2014, the circuit court responded.  On May 2, 2014, we granted

the stay and took the petition for writ of mandamus as a case.[2]  On June 13, 2014, Friar filed

a petition of writ of mandamus or in the alternative a writ of certiorari directing the circuit

court to rescind its orders for fitness-to-proceed and criminal-responsibility evaluations of

Friar. On July 30, 2014, the circuit court responded, and Friar replied on August 13, 2014.

This court has jurisdiction pursuant to Ark. Sup. Ct. R. 6-1(a) (2014) as Friar requests this

court to grant an extraordinary writ.

Friar presents three points in his petition for extraordinary writ: (1) the circuit court

---

[1]On January 14, 2014, Friar filed a motion to bar the State from seeking the death penalty due to Friar's mental retardation.

[2]In his original petition, Friar only requested we issue a writ of mandamus.  However, we have treated petitions for mandamus as petitions for writs of certiorari.  *Ark. Democrat-Gazette v. Zimmerman*, 341 Ark. 771, 20 S.W.3d 301(2000)(we treat the petition for mandamus as one for certiorari); *see Childress v. Humphrey*, 329 Ark. 504, 950 S.W.2d 220 (1997) (per curiam)(petition for mandamus treated as petition for certiorari).

failed and refused to follow the plain mandatory language of Ark. Code Ann. § 5-2-305 (Repl. 2013) in ordering simultaneous fitness-to-proceed and criminal-responsibility examinations of Friar; (2) the circuit court failed and refused to follow the plain mandatory language of Ark. Code Ann. § 5-2-305 in ordering a fitness-to-proceed examination of Friar; and (3) the circuit court failed and refused to follow the plain mandatory language of Ark. Code Ann. § 5-2-305 in ordering a criminal-responsibility examination of Friar.

Friar has requested that this court issue a writ of mandamus directing the circuit court to rescind the orders. In *State ex rel. Purcell v. Nelson*, we explained the function of the writ of mandamus:

> The primary function of the writ of mandamus is to require an inferior court or tribunal to act when it has improperly failed or declined to do so. It is never applied to control the discretion of a trial court or tribunal. Nor can it be used to correct an erroneous exercise of discretion.

246 Ark. 210, 215–16, 438 S.W.2d 33, 37–38 (1969) (internal citations omitted).

Alternatively, Friar has requested that this court issue a writ of certiorari directing the circuit court to rescind the orders. A writ of certiorari is also extraordinary relief. "In determining its application, we will not look beyond the face of the record to ascertain the actual merits of a controversy, or to review a circuit court's discretionary authority." *S. Farm Bureau Cas. Ins. Co. v. Parsons*, 2013 Ark. 322, at 5, 429 S.W.3d 215, 218. A writ of certiorari lies to correct proceedings erroneous on the face of the record when there is no other adequate remedy; it is available to the appellate court in its exercise of superintending control over a lower court that is proceeding illegally where no other mode of review has been provided. *Casement v. State*, 318 Ark. 225, 884 S.W.2d 593 (1994) (citing *Lupo v.*

SLIP OPINION

*Lineberger*, 313 Ark. 315, 316–17, 855 S.W.2d 293, 293–94 (1993)).

There are two requirements that must be satisfied in order for the court to grant a writ of certiorari. First, there can be no other adequate remedy but for the writ of certiorari. No other adequate remedy exists where the issuing court has no legal authority to support its order. *Ark. Game & Fish Comm'n v. Herndon*, 365 Ark. 180, 183, 226 S.W.3d 776, 779 (2006). Second, the writ of certiorari lies only where (1) it is apparent on the face of the record that there has been a plain, manifest, clear, and gross abuse of discretion, or (2) there is a lack of jurisdiction, an act in excess of jurisdiction on the face of the record, or the proceedings are erroneous on the face of the record. *Id.* Accordingly, a writ lies when the judge has acted in excess of his or her authority. *See Conner v. Simes*, 355 Ark. 422, 139 S.W.3d 476 (2003).

Additionally, as the parties have noted, Friar's petition for extraordinary writ involves our interpretation of Ark. Code Ann. § 5-2-305. We note that the question of the correct application and interpretation of an Arkansas statute is a question of law, which this court decides de novo. *Broussard v. St. Edward Mercy Health Sys., Inc.*, 2012 Ark. 14, 386 S.W.3d 385. "When reviewing issues of statutory interpretation, we are mindful that the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning." *Voltage Vehicles v. Ark. Motor Vehicle Comm'n*, 2012 Ark. 386, at 7, 424 S.W.3d 281, 286. We construe the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. *Id.* "When a statute is clear, we give it its plain meaning, and this court

SLIP OPINION

will not search for legislative intent; rather, that intent will be gleaned from the plain meaning of the language used." *Id*. at 7–8, 424 S.W.3d at 286. It is for this court to decide what a statute means. *Chase Bank USA, N.A. v. Regions Bank*, 2013 Ark. 129.

*Fitness-To-Proceed Examination*

With these standards in mind, we turn to the merits of Friar's petition. First, we address Friar's assertion that the circuit court erred in ordering the fitness-to-proceed examination because the circuit court was required to make a finding of reasonable suspicion. Friar contends that facts were not presented upon which the circuit court could make a reasonable-suspicion finding prior to ordering the examination.

The circuit court's order provides in pertinent part:

> Pursuant to Ark. Code Ann. § 5- 2-305, this Court finds reasonable suspicion to believe that the defendant may not be fit to proceed and therefore ORDERS [an examination.]

The applicable statute, Ark Code Ann. § 5-2-305, provides in pertinent part:

> (a)(1) Subject to the provisions of §§ 5-2-304 and 5-2-311, the court shall immediately suspend any further proceedings in a prosecution if:
> . . .
> > (B)(i) Any party or the court raises the issue of the defendant's fitness to proceed.
> >
> > (ii) The court shall order a fitness-to-proceed examination if it finds there is a reasonable suspicion that a defendant is not fit to proceed.

The circuit court contends that it did not err because the plain language of the statute authorizes the circuit court to make the reasonable suspicion finding and requires the circuit court to order the examination once a finding is made. Specifically, the circuit court asserts that the language in subsection (a)(1)(B)(i), "[a]ny party or the court raises the issue of the

defendant's fitness to proceed," plainly authorizes the circuit court to raise the issue. The circuit court further responds that the following subsection, (a)(1)(B)(ii), which states, "The court shall order a fitness-to-proceed examination if it finds there is a reasonable suspicion that a defendant is not fit to proceed," means that once the court finds such suspicion, the circuit court must order the examination.

With our rules of statutory construction in mind, in reviewing Ark. Code Ann. § 5-2-305, we agree with the circuit court. The plain language of subsection (a)(1)(B)(i) authorizes the circuit court to raise the issue of Friar's fitness to proceed and requires the circuit court to order the examination once a finding of reasonable suspicion has been made. Here, the record demonstrates that the State and the circuit court both raised the issue of fitness to proceed and the circuit court's order clearly stated that "this Court finds reasonable suspicion to believe that the defendant may not be fit to proceed." Accordingly, the reasonable-suspicion finding was made, and the examination ordered. Therefore, we deny Friar's request for this court to rescind that order on this basis.

*Criminal-Responsibility Examination*

We now turn to Friar's next basis for extraordinary relief. Friar asserts that the circuit court erred in ordering a criminal-responsibility examination of Friar. The circuit court's "Order for Criminal Responsibility Examination of Defendant" states in pertinent part,

> The Defendant filed a Motion to Bar the State from Seeking the Death Penalty due to the Defendant's Mental Retardation on January 22, 2014.

> The definition of "mental retardation" in A.C.A. § 5-4-618( a)( 1)( A) is set out as follows:

"Significantly subaverage general intellectual functioning accompanied by a significant deficit or impairment in adaptive functioning manifest in the development period, but no later than age eighteen( 18) years of age."

This is essentially the same as the definition of "mental disease or defect" contained in A.C.A §5–2–301(6)(A)(ii):

"A state of significantly subaverage general intellectual functioning existing concurrently with a defect of adaptive behavior that developed during the developmental period."

Therefore the issue of Mental Disease or Defect has been raised by the Defendant's Motion to Bar the State from Seeking the Death Penalty due to the Defendant's Mental Retardation.

Pursuant to Ark. Code Ann. § 5–2–305, the State of Arkansas has petitioned the Court for a criminal responsibility examination and opinion.

It is therefore ORDERED[.]

Two statutes are applicable to the criminal-responsibility order at issue, Ark. Code Ann. §§ 5–2–304 and 5–2–305. First, Ark. Code Ann. § 5–2–304, "Notice of defense," provides in pertinent part,

(a) When a defendant intends to raise mental disease or defect as a defense in a prosecution or put in issue his or her fitness to proceed, the defendant shall notify the prosecutor and the court at the earliest practicable time.

Next, Ark. Code Ann. § 5–2–305, "Mental health examination of defendant," provides in pertinent part:

(a)(1) Subject to the provisions of §§ 5–2–304 and 5–2–311, the court shall immediately suspend any further proceedings in a prosecution if:

(A)(i) A defendant charged in circuit court files notice that he or she intends to rely upon the defense of mental disease or defect.

(ii) *After the notice of intent to raise the defense of not guilty for reason of mental disease*

SLIP OPINION

> *or defect is filed, any party may petition the court for a criminal responsibility examination and opinion.*

*Id.* (emphasis added).

Relying on the plain language of Ark. Code Ann. § 5-2-305(a)(1)(A)(ii), Friar asserts that the circuit court is without authority to order the criminal-responsibility examination because Friar must give notice of the intent to raise the defense of not guilty for reason of mental disease or defect. Once notice is filed, then and only then can an examination be ordered. Friar further contends that the circuit court does not have authority to raise the issue of criminal responsibility on its own nor can any party raise the issue.

The circuit court responds that it was justified in its decision to order the criminal responsibility examination because the notice of mental-retardation defense in Ark. Code Ann. § 5-4-618 necessarily includes notice of a mental disease or defect defense for purposes of the required notice. Friar replies that notice that Friar intends to claim that he is ineligible for the death penalty due to his low IQ and adaptive skills under Ark. Code Ann. § 5-4-618 does not effectively invoke a not guilty plea due to mental disease or defect under Ark. Code Ann. § 5-2-305.

The plain language of Ark. Code Ann. § 5-2-305 provides that (1) after a defendant is charged in circuit court, (2) if the defendant files notice of intent to raise the defense of not guilty for reason of mental disease or defect, then (3) any party may petition the court for the defendant to submit to a criminal-responsibility examination and opinion. Ark. Code Ann. § 5-2-305 plainly and unambiguously states that "*[a]fter the notice of intent to raise the defense of not guilty for reason of mental disease or defect is filed*, any party may petition the court for a

criminal responsibility examination and opinion."

Here, the record demonstrates that, at this juncture, Friar has not filed a "notice of intent to raise the defense of *not guilty for reason of mental disease or defect*." Therefore, the circuit court has acted without jurisdiction in ordering Friar to submit to a criminal responsibility examination. Having found that the circuit court erred, we move to Friar's request to issue a writ of mandamus or in the alternative a writ of certiorari. First, a writ of mandamus is not warranted as the circuit court has not improperly failed or declined to act when required. *Satterfield v. Fewell*, 202 Ark. 67, 149 S.W.2d 949 (1949); *Thompson v. Foote*, 199 Ark. 474, 134 S.W.2d 11 (1939); *Hammond v. Kirby*, 233 Ark. 560, 345 S.W.2d 910 (1961). However, Friar has met the elements for this court to issue a writ of certiorari. First, Friar has no other adequate remedy. No other adequate remedy exists where the issuing court has no legal authority to support its order. *Ark. Game & Fish Comm'n v. Herndon*, 365 Ark. 180, 183, 226 S.W.3d 776, 779 (2006). Second, as discussed above, the circuit court has acted in excess of its authority in issuing the criminal-responsibility-examination order. Therefore, we agree that an extraordinary writ is appropriate under these circumstances and grant the writ of certiorari and rescind the circuit court's criminal-responsibility-examination order. Finally, as we have granted the writ on the criminal responsibility order, we need not reach Friar's argument regarding simultaneous examinations because the issue is moot.

Writ of mandamus denied; writ of certiorari granted in part; denied in part.
HANNAH, C.J., not participating.
*Teri Chambers*, Arkansas Public Defender Commission, for petitioner.
*Dustin McDaniel*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for respondent.