Cite as 2021 Ark. 38

# SUPREME COURT OF ARKANSAS
**No.** CV–20–171

|  |  |
|---|---|
|  | **Opinion Delivered:** March 4, 2021 |
| ARKANSAS ETHICS COMMISSION<br>APPELLANT/CROSS-APPELLEE<br><br>V.<br><br>SUSAN K. WEAVER<br>APPELLEE/CROSS-APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-19-957]<br><br>HONORABLE MACKIE PIERCE, JUDGE<br><br><br>CIRCUIT COURT'S ORDER AFFIRMED ON DIRECT APPEAL; CROSS-APPEAL DISMISSED. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant Arkansas Ethics Commission appeals the Pulaski County Circuit Court's order vacating the Commission's finding that appellee Susan K. Weaver violated Arkansas Code Annotated section 7-6-228(c)(1) (Supp. 2019) when a magazine published her campaign advertisement without the required "paid for by" disclosure during Weaver's successful 2018 judicial campaign. For reversal, the Commission argues that it correctly interpreted section 7-6-228(c)(1) to find Weaver guilty of a violation in the absence of a culpable mental state. Alternatively, the Commission argues that substantial evidence supports its finding that Weaver was negligent. On cross-appeal, Weaver argues that the

Commission's procedures violated her due process rights. We reverse the Commission's decision in part and vacate in part on direct appeal and dismiss on cross–appeal.

The relevant facts are not disputed. During Weaver's campaign for Circuit Judge— Division 1, Faulkner County, Weaver's campaign worked with *Faulkner Lifestyle* to create a print ad to run in the magazine. LeAnn Livingston, a staff member from Weaver's campaign, and Raegan Miller, a *Faulkner Lifestyle* employee, exchanged emails regarding the ad during the editing process. On April 22, 2018, Miller sent Livingston a copy of the ad, and Livingston emailed Miller the next day saying that she loved it but wanted to add Facebook, Instagram, and Twitter icons. Miller responded, "Sure thing!" Later that day, Livingston emailed Miller asking for an invoice so that she could pay for the ad. Critically, Livingston sent a final email to Miller the next day directing her to include the "paid for by" language. Unfortunately, Miller did not include the language, but nonetheless, ran the unsanctioned ad. The publication took full responsibility for the oversight.

Weaver's 2018 opponent filed an ethics complaint on July 10, 2018.[1] Upon receiving the complaint, the Commission notified Weaver that it would investigate whether or not she had "violated Ark. Code Ann. § 7-6-228(c)(1) by omitting the disclaimer language on . . . a full page ad which ran in the May 2018 edition of Faulkner Lifestyle." Weaver responded, strongly denied any wrongdoing, and stated, "I did not fail to include the

---

[1]The complaint alleged several violations. The Commission dismissed all claims except the one relating to the magazine ad that is the subject of this appeal.

language, rather the magazine did." Weaver attached the relevant emails as supporting exhibits.

The Commission met on October 19, 2018, to consider the results of its staff's investigation into the complaint. After the staff's presentation of the evidence, the Commission found probable cause that Weaver had violated section 7-6-228(c)(1) when *Faulkner Lifestyle* published the print ad without the required disclosure. The Commission notified Weaver of this finding and offered to settle the case by issuing a public letter of caution as a sanction. Weaver declined the offer and requested a hearing.

The Commission held a public hearing on January 18, 2019. Before the hearing, Weaver's counsel filed a motion to declare the Commission's procedures unconstitutional. Weaver claimed that the Commission's procedures violated her state and federal due process rights because the Commission is the singular entity that determines whether there is probable cause to find a violation, offers a settlement, and adjudicates the issue if the settlement offer is rejected. At the hearing, Weaver's counsel presented arguments regarding the constitutionality of the Commission's procedures, whether section 7-6-228(c)(1) requires a culpable mental state, and whether the advertisement was "campaign material" covered by that section. The Commission determined that its procedures were constitutional and that the ad constituted campaign material and violated section 7-6-228(c)(1). The Commission further found that section 7-6-228(c)(1) did not require a culpable mental state, but that if it did, Weaver violated that section by acting negligently. However, the Commission found good cause to impose no sanction. Weaver sought judicial

3

review pursuant to Arkansas Code Annotated section 25-15-212 (Supp. 2019) of the Administrative Procedure Act. The circuit court concluded that the Commission's procedures were constitutional but that the Commission erred in its conclusion that the standard of proof for a violation of section 7-6-228(c)(1) is strict liability. The circuit court further determined that the Commission's alternative finding that Weaver was negligent was not supported by substantial evidence. It is from this order that the parties appeal.

Our review on appeal is directed toward the decision of the administrative agency, rather than the decision of the circuit court. *Hurd v. Ark. Oil & Gas Comm'n*, 2020 Ark. 210, 601 S.W.3d 100. As with all appeals from administrative decisions under the Administrative Procedure Act, either the circuit court or the appellate court may reverse the agency decision if it concludes that the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error or law; (5) not supported by substantial evidence of record; or (6) arbitrary, capricious, or characterized by abuse of discretion. *Id.*; Ark. Code Ann. § 25-15-212(h).

To establish an absence of substantial evidence to support the decision, the challenging party must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusion. *Teston v. Ark. State Bd. of Chiropractic Exam'rs*, 361 Ark. 300, 206 S.W.3d 796 (2005). When the agency's decision is supported by substantial evidence, it automatically follows that the decision

4

cannot be classified as arbitrary and capricious. *Wright v. Ark. State Plant Bd.*, 311 Ark. 125, 842 S.W.2d 42 (1992). We afford no deference to an agency's statutory interpretation; our review is de novo. *Myers v. Yamato Kogyo Co., Ltd.*, 2020 Ark. 135, 597 S.W.3d 613.

This appeal involves our interpretation of section 7-6-228(c)(1). The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Taylor v. Biba*, 2014 Ark. 22. We reconcile statutory provisions in order to make them consistent, harmonious, and sensible and to give effect to every part. *3 Rivers Logistics, Inc. v. Brown-Wright Post No. 158*, 2018 Ark. 91, 548 S.W.3d 137. When the language of a statute is plain and unambiguous, this court determines legislative intent from the ordinary meaning of the language used. *Id.*

In this instance, there is no question that *Faulkner Lifestyle* published an ad in support of Weaver's candidacy without the statutorily required financial disclosure language. Section 7-6-228(c)(1) requires that

> [c]ampaign signs, campaign literature, and other printed campaign materials under this section shall clearly contain the words "Paid for by" followed by the name of the candidate, committee, or person who paid for the campaign sign, campaign literature, or other printed campaign materials.

On appeal, the Commission argues that section 7-6-228(c)(1) does not have a culpable-mental-state requirement, and if the General Assembly had wanted one, it could have included one. Alternatively, the Commission argues that its finding that Weaver was

negligent was supported by substantial evidence. However, we hold that substantial evidence does not support the Commission's conclusion under either standard.

The Commission's final order states that Weaver "committed a violation of Ark. Code Ann. § 7-6-228(c)(1) in her capacity as a candidate for Circuit Judge—Division 1, Faulkner County during the 2018 election cycle by placing a campaign ad in the May 2018 edition of *Faulkner Lifestyle* which did not include the 'Paid for by' disclaimer required by statute." Although the Commission argues that section 7-6-228(c)(1) either has no mental state requirement or that Weaver negligently violated the statute's provisions, we conclude that the required mental state is inconsequential given the facts of this case. The record demonstrates that neither Weaver nor a member of her campaign staff "committed" a violation or "placed" an ad without the appropriate disclosure. Instead, Weaver ordered an ad that was to include the "paid for by" language. Notably, the publication was the party that did not include the necessary and requested language. The magazine's failure is not Weaver's failure. It would be irrational to expect a candidate to don a printer's apron and supervise production of a magazine to avoid running afoul of our ethics statutes.

In short, Weaver did not "place" an ad that violated Arkansas Code Annotated section 7-6-228(c)(1), and substantial evidence does not support the Commission's decision. Because we reverse the Commission's ruling that Weaver violated section 7-6-228(c)(1), we decline to consider her alternative argument that the Commission's procedures are unconstitutional. We therefore vacate the Commission's order as to Weaver's constitutional arguments and dismiss her cross-appeal. It is our duty to refrain from addressing

6

constitutional issues if or when the case can be disposed of without determining constitutional questions. *Tollett v. Wilson*, 2020 Ark. 326, 608 S.W.3d 602.

Commission's decision reversed in part, vacated in part.

Circuit Court's order affirmed on direct appeal; cross-appeal dismissed.

Special Justice LEON HOLMES concurs.

KEMP, C.J., and WYNNE, J., and Special Justice TIFFANY MILLIGAN BROWN dissent.

BAKER and WOOD, JJ., not participating.

**LEON HOLMES, Special Justice, concurring.** The Court has issued two opinions, each joined by three justices, and each announcing the plain meaning of a statute. Both opinions miss the plain meaning of the statute. They do so because both parties base their arguments on the same false assumption as to the meaning of the statute that Susan Weaver was found to have violated; and both opinions issued by the Court, rather than correct that false assumption, have adopted it.

Weaver was charged with and found guilty of violating Ark. Code Ann. § 7-6-228(c)(1). In charging Weaver with violating that provision, the Commission staff assumed that subsection 7-6-228(c)(1) prohibits placing a printed political advertisement without the "Paid for by" disclosure. Weaver has accepted that assumption.[1] The Commission likewise

---

[1]Weaver argued below but not on appeal that because subsection 7-1-103(a)(7)(A)(i) specifically includes newspaper advertisements, the term *printed campaign materials* in subsection 7-6-228(c)(1) does not, but she has never challenged the assumption that

accepted that assumption, as did the Circuit Court. Now this Court, too, has accepted that assumption in order to avoid deciding the case based on an argument that was not made by the parties. But that assumption is false.

As a matter of context, it is helpful to know that section 7-6-228 is included in a subchapter of the election code devoted largely to campaign finance reporting requirements. Section 7-6-228 provides:

> (a) A candidate may retain campaign signs, campaign literature, and other printed campaign materials that:
>
> (1) Were purchased by the campaign;
>
> (2) Were reported on the appropriate contribution and expenditure report for the campaign at the time of the purchase; and
>
> (3) Are retained for use in a future campaign by the same candidate.
>
> (b) A candidate:
>
> (1) May reuse the campaign signs, campaign literature, and other printed campaign materials under subsection (a) of this section in future campaigns; and
>
> (2) Is not required to list the campaign signs, campaign literature, and other printed campaign materials under subsection (a) of this section in future reports filed under this subchapter.
>
> (c) (1) Campaign signs, campaign literature, and other printed campaign materials *under this section*[2] shall clearly contain the words "Paid for by" followed by the name of the candidate, committee, or person who paid

---

subsection 7-6-228(c)(1) prohibits the use of printed campaign materials without the "Paid for by" disclosure.

[2]The Commission did not take note of this small but important prepositional phrase, nor did the briefs of either party or the opinions issued today.

for the campaign sign, campaign literature, or other printed campaign materials.

(2) Subdivision (c)(1) of this section applies only to campaign signs, campaign literature, and other printed campaign materials created by or sponsored by a political candidate, a political action committee, or an independent expenditure committee. [Emphasis added.]

Taken as a whole and viewed in context, section 7-6-228 provides that a candidate may retain and reuse campaign materials in a subsequent campaign without reporting them again in the reports required by subchapter 6 of the election code. Subsection 7-6-228(c)(1) limits the campaign materials that may be so reused to those that contain the "Paid for by" disclosure; it does not duplicate the prohibition in section 7-1-103(a)(7)(i). Because subsection 7-6-228(c)(1) is essentially a definitional section limiting the application of section 7-6-228, not a prohibition on placing printed campaign advertisements without the "Paid for by" disclosure, asking whether subsection 7-6-228(c)(1) imposes strict liability or, instead, includes a *mens rea* requirement, makes no sense.

Anyone who pays the slightest attention to election campaigns in Arkansas knows, or has reason to know, that Arkansas law requires that every political advertisement include a "Paid for by" disclosure. As to printed advertisements, that requirement is set forth in Ark, Code Ann. § 7-1-103, which states, in pertinent part:

(a) The violation of any of the following shall be deemed misdemeanors punishable as provided in this section:

(7)(A)(i) All articles, statements, or communications appearing in any newspaper printed or circulated in this state intended or calculated to influence the vote of any elector in any election and for the publication of which a consideration is paid or to be paid shall clearly contain the words

"Paid Political Advertisement", "Paid Political Ad", or "Paid for by" the candidate, committee, or person who paid for the message.

(ii) Both the persons placing and the persons publishing the articles, statements, or communications shall be responsible for including the required disclaimer.

Weaver was never charged with or found guilty of violating this provision. No correspondence from the Commission staff or hearing notice mentioned subsection 7-1-103(7)(A)(i); nor did the Commission refer to that provision in its final order. Although Weaver was not charged with or found guilty of violating subsection 7-1-103(7)(A)(i), the Commission imported from this provision the "persons placing" language, holding that Weaver placed an advertisement without the "Paid for by" disclosure, even though subsection 7-6-228(c)(1) does not contain that language. The opinion of the Court—the opinion by Justice Hudson, joined by Justices Womack and Webb—also imports the "persons placing" language from subsection 7-1-103(7)(A)(i) into subsection 7-6-228(c)(1), holding that Weaver did not place an advertisement without the "Paid for by" disclosure.

The parties framed the issue based on a false assumption, and this Court, adhering to the principle that a court generally will not decide a case on a basis not presented by a party, has accepted that false assumption in interpreting subsection 7-6-228(c)(1). Rather than decide the case based on a false assumption as to the meaning of the statute, I would hold that the Commission misinterpreted the statute. The Court has reached the right result— Weaver did not violate subsection 7-6-228(c)(1)—but for the wrong reason.

10

The principle that a court will not decide a case on a ground not presented by any party is based on two important considerations. First, briefs and arguments are part of the adversary process designed to educate the court concerning the relevant facts and applicable law so that the court can make a fully informed decision. Second, as a matter of fairness, a party should be given an opportunity to respond to the arguments asserted against its position. A court that decides a dispute on a basis not presented by any party runs the risk of making a decision that is not fully informed and may unfairly deprive the losing party of an opportunity to rebut the rationale for the decision.

Neither of these considerations justify the decision here to base the interpretation of a provision of the election code on a false assumption.

As to the first consideration, the facts are undisputed, and the statute is so clear and simple that Court hardly needs briefs to decide its meaning. In fact, the point on which the case turns—that subsection 7-6-228(c)(1) prohibits placing a political advertisement without the "Paid for by" disclosure—is assumed rather than argued by the parties; and it is assumed rather than explained by both three-judge opinions issued today. The Court attempts to avoid deciding an issue—whether subsection 7-6-228(c)(1) prohibits placing an advertisement without the "Paid for by" disclosure--that has not been argued, but the attempt fails; if briefs are needed for the Court to see the truth on this pivotal issue, the Court is flying blind. That issue has not been briefed, nor is it addressed in the opinions issued today.

11

As to the second consideration, the Arkansas Ethics Commission is not a private party with rights or interests at stake, so the fairness consideration does not apply to it in the same way as it would to a private person. The Commission's only concern is to decide the matters presented to it fairly and in accordance with the law, so the best service that the Court can render to the Commission is to provide a correct interpretation of the statutes that the Commission must apply in the matters that it decides.

Even if the circumstances suggested that briefs were needed for the Court to be fully informed, or that it might be unfair to the Commission to decide the case on a basis not argued by the parties, I still would not base an interpretation of the statute on a false assumption. If such circumstances were present, the Court could *sua sponte* direct the parties to brief the issue or remand for further consideration by the Commission.

It should go without saying that the public interest demands that this Court do its utmost to interpret statutes correctly.

We should not be deflected from the Court's primary duty—to declare the law faithfully and correctly—by an important but nonetheless secondary principle the reasons for which do not apply here.

For these reasons, with utmost respect for this Court, I concur.

**JOHN DAN KEMP, Chief Justice, dissenting.** The majority opinion reverses in part and vacates in part a decision by appellant Arkansas Ethics Commission ("the Commission") that appellee Susan Weaver violated Arkansas Code Annotated section 7-6-228(c)(1) (Supp. 2019) by failing to include the requisite "Paid for by" disclosure in a

campaign advertisement. The majority concludes that "[t]he record demonstrates that neither Weaver nor a member of her campaign staff 'committed' a violation or 'placed' an ad without the appropriate disclosure," but the words "committed" and "placed" do not appear anywhere in section 7-6-228(c)(1)—a statute that this court must interpret on appeal. For the following reasons, I respectfully dissent.

I. *Commission's Direct Appeal*

A. Facts Relevant to the Direct Appeal

The following facts are relevant to my analysis and are largely omitted from the majority opinion. During her 2018 campaign for Faulkner County Circuit Judge, Weaver purchased a full-page advertisement from a monthly magazine, *Faulkner Lifestyle*. Weaver's campaign advertisement contained the following: (1) at the top, a banner running the width of the ad stating "Elect Judge Susan Weaver For Circuit Court—Division 1"; (2) in the center, Weaver's photograph with the motto "Courtroom Experience Matters" next to a smaller banner that stated "Elect Judge Susan Weaver Circuit Court Division 1"; and (3) at the bottom, the sentence, "Learn more about Judge Susan Weaver at JudgeSusanWeaver.com" with social-media icons underneath that statement. Weaver's ad did not include a "Paid for by" disclosure.

Prior to the ad's publication, LeAnn Livingston, a staff member from Weaver's campaign, and Raegan Miller, an employee of *Faulkner Lifestyle*, exchanged a series of email messages during the proofing process. On April 22, 2018, Miller wrote, "Hey LeAnn! Here is the full page ad, let me know if you have any changes!!" The next day, on April 23,

13

Livingston responded, "I love it! Could we maybe just add the Facebook, Instagram and Twitter icons on the bottom?" Miller replied, "Sure thing!" Later that afternoon, Weaver's staff added, "Please send me an invoice so I can get you paid!!" On April 24, at 4:14 p.m., Livingston sent another message stating, "It also needs to say paid for by the Committee to Elect Judge Susan Weaver." The record reflects that Weaver's campaign did not ask to review the ad before its publication, and the ad was published without the "Paid for by" disclosure.

According to an affidavit from Brandy Strain-Dayer, the owner of *Faulkner Lifestyle*, a "staff designer" at the magazine was informed by Weaver's campaign that the "Paid for by" disclosure needed to be included on the advertisement, but the magazine printed the ad without the correction. The affidavit explained that the staff designer was no longer employed at the magazine "due to many mistakes of this nature," and Strain-Dayer accepted fault for the ad's omission.

On July 10, 2018, the Commission received a citizen complaint from Andrea Woods against Weaver in her capacity as a circuit judge candidate, alleging, *inter alia*, that Weaver had violated section 7-6-228(c)(1) by placing the advertisement in *Faulkner Lifestyle* without the requisite "Paid for by" disclosure. After receiving notice of Woods's complaint, Weaver responded via email to the Commission, and on the specific allegation concerning the *Faulkner Lifestyle* advertisement, she wrote,

> [I]t is alleged that I failed to include the "paid for by" disclaimer in my campaign advertisement in the May issue of *Faulkner County Lifestyle* [sic]. I did not fail to include the language, rather the magazine did. I have attached

a copy of the email that was sent to the magazine asking them to add the language to the artwork that they had submitted for print. This was not my nor my campaign committee's mistake, and I deny any wrongdoing.

Based on its investigation, the Commission voted to find probable cause that Weaver had violated section 7-6-228(c)(1) by placing a campaign ad without the "Paid for by" disclosure in the May 2018 edition of *Faulkner Lifestyle*. The Commission dismissed the remaining claims against Weaver.

On February 11, 2019, after a public hearing, the Commission filed its final order with the following findings of fact: (1) Weaver's campaign ad was not camera ready, and therefore went through *Faulkner Lifestyle*'s proofing process; (2) as part of the proofing process, *Faulkner Lifestyle* sent the ad back to the campaign and asked if there were any changes; (3) two days later, after a number of emails were exchanged, the campaign requested that the ad state that it was paid for by the Committee to Elect Judge Susan Weaver; and (4) the campaign did not ask to see a final copy of the ad showing that the language had been added. The Commission made the following conclusions of law:

> 30. The Commission does not read Ark. Code Ann. § 7-6-228(c)(1) as requiring a culpable mental state in order to find a violation and issue a public letter.

> 31. In the event [that] Ark. Code Ann. § 7-6-228(c)(1) does require a culpable mental state in order to find a violation and issue a public letter, then the Commission finds that the failure of [Weaver] and/or her campaign to request to review a final copy of the ad in *Faulkner Lifestyle* constituted negligence.

> 32. [Weaver] *committed* a violation of Ark. Code Ann. § 7-6-228(c)(1) in her capacity as a candidate for Circuit Court Judge – Division 1, Faulkner County during the 2018 election cycle by *placing* a campaign ad in the May

15

2018 edition of *Faulkner Lifestyle* which did not include the "Paid for by" disclaimer required by statute.

> 33. With respect to [Weaver's] violation of Ark. Code Ann. § 7-6-228(c)(1), the Commission found no sanction should be imposed with respect to said violation, for good cause shown.

(Emphasis added.)

Pursuant to Arkansas Code Annotated section 25-15-212 (Supp. 2019) of the Administrative Procedure Act, Weaver sought judicial review of the Commission's findings and conclusions in circuit court. Following a hearing, the circuit court entered an order on November 20, 2019, vacating the Commission's rulings and making findings of fact and conclusions of law:

> The facts of this case are not in dispute. An advertisement purchased by Weaver did not contain the "paid for" line despite Weaver's request to include it. The publisher took full responsibility for the omission. The Commission found that there was just cause not to assess a penalty. However, Weaver challenges the conclusion that she committed a violation at all.
>
> . . . .
>
> The Commission erred in holding that the standard of proof for violation of Ark. Code Ann. § 7-6-228(c)(1) is strict liability. The Court finds that there is no authority in the statutes to reach the conclusion that a violation of that provision may be determined by strict liability. The Commission's conclusion is in violation of statutory provisions, in excess of its statutory authority and [is] an error of law.
>
> The Commission further erred in its alternate holding that Weaver was negligent. There is no evidence in the record that Weaver was negligent. The conclusion that Weaver was negligent is not supported by substantial evidence of record and is arbitrary, capricious, or characterized by abuse of discretion.

The circuit court vacated the Commission's ruling that Weaver committed a violation of section 7-6-228(c)(1).

B. Arkansas Code Annotated Section 7-6-288(c)(1)

The critical question on appeal—whether Weaver violated the requirements set forth in Arkansas Code Annotated section 7-6-228(c)(1) by failing to include the "Paid for by" disclosure—is an issue of statutory interpretation. While the majority opinion couches this question in terms of a substantial-evidence standard, this court has "acknowledged confusion in prior cases regarding the standard of review for agency interpretations of statutes and clarified the level of deference due: agency interpretations of statutes will be reviewed de novo." *Am. Honda Motor Co., Inc. v. Walther*, 2020 Ark. 349, at 5, 610 S.W.3d 633, 636 (citing *Myers v. Yamato Kogyo Co., Ltd.*, 2020 Ark. 135, 597 S.W.3d 613).

It is the province and duty of this court to determine what a statute means. *Id.*, 610 S.W.3d at 636. In considering the meaning and effect of a statute, this court construes it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.*, 610 S.W.3d at 636. The interpretation of a statute will be based solely on the clear meaning of the text. *Id.*, 610 S.W.3d at 636. Thus, this court's de novo review mandates a strict statutory interpretation of section 7-6-228(c)—not the order of the Commission.

Section 7-6-228(c) provides in full:

> (c)(1) Campaign signs, campaign literature, and other printed campaign materials under this section shall clearly contain the words "Paid for by" followed by the name of the candidate, committee, or person who paid for the campaign sign, campaign literature, or other printed campaign materials.

17

(2) Subdivision (c)(1) of this section applies only to campaign signs, campaign literature, and other printed campaign materials created by or sponsored by a political candidate, the campaign of a political candidate, a political action committee, or an independent expenditure committee.

Because its meaning is plain, I view section 7-6-228(c)(1) as unambiguous. It clearly states that "printed campaign materials . . . *shall* clearly contain the words 'Paid for by'" on the materials "followed by the *name of the candidate, committee, or person who paid for the . . . printed campaign materials.*" (Emphasis added.) The word *shall* means mandatory compliance unless it would lead to an absurd result. *Vaughn v. Mercy Clinic Fort Smith Communities*, 2019 Ark. 329, at 7, 587 S.W.3d 216, 221. Because Weaver's advertisement did not contain the statutorily required "Paid for by" disclosure, I conclude that its omission constitutes a violation of section 7-6-228(c)(1).

Further, section 7-6-228(c) does not contain any language regarding one's intent to include or omit the requisite disclosure. Nor do I discern any language in section 7-6-228(c) that provides a defense for "a political candidate, the campaign of a political candidate, a political action committee, or an independent expenditure committee" in the event that the disclosure is omitted. Ark. Code Ann. § 7-6-228(c)(2). Indeed, the majority has placed the blame for the omission in Weaver's purchased advertisement on the shoulders of *Faulkner Lifestyle*'s publisher, who "don[s] the printer's apron." But the express language of section 7-6-228(c)(1) does not allow for such blame-shifting of a political candidate or her surrogates listed in subdivision (c)(2). Indeed, once the Commission found that Weaver had violated the terms of section 7-6-228(c)(1), it then proceeded to the second step of its inquiry by

18

finding that "no sanction should be imposed [against Weaver] with respect to said violation, for good cause shown." *See* Ark. Code Ann. § 7-6-218(b)(4) (Supp. 2019) (authorizing the Commission to sanction after it "finds a violation").

In sum, the Arkansas General Assembly has not seen fit to amend section 7-6-228(c)(1) to include either a political candidate's intent to omit the requisite disclosure or her defense in failing to do so. In construing statutes, this court's case law is replete with assertions that it will not add words to a statute to convey a meaning that is not there. *Our Community, Our Dollars v. Bullock*, 2014 Ark. 457, 452 S.W.3d 552 (citing *McMillan v. Live Nation Entm't, Inc.*, 2012 Ark. 166, 401 S.W.3d 473). Furthermore, this court will not read into a statute a provision not put there by the General Assembly. *Id.*, 452 S.W.3d 552 (citing *Neeve v. City of Caddo Valley*, 351 Ark. 235, 91 S.W.3d 71(2002)). Accordingly, I would affirm the Commission's ruling on section 7-6-228(c)(1) and reverse the circuit court's order on direct appeal.[1]

---

[1]The Commission also argues that its alternative finding—that Weaver was negligent in failing to obtain a final proof of her campaign ad before it was printed in *Faulkner Lifestyle*—is supported by substantial evidence. Because I conclude that the Commission properly ruled that Weaver violated the statutory requirements of section 7-6-228(c)(1), I view the Commission's second argument concerning its alternative ruling as moot.

It is worth noting that the concurring opinion largely defines its position based on this alternative, superfluous argument by incorporating terms such as, "charged with," "found guilty," "mens rea," and "strict liability," as if this were a criminal case. It is not. The record does not reflect that Weaver has been criminally charged under Arkansas Code Annotated section 7-1-103 (Supp. 2019) or any other statute.

## II. *Weaver's Cross-Appeal*

I would therefore reach the merits of Weaver's cross-appeal. Weaver contends that section 7-6-228 and the Commission's regulations are unconstitutional, both facially and as applied, in "mixing roles of probable cause finder, negotiator, and adjudicative entity." She contends that her due-process rights, pursuant to the Fourteenth Amendment of the United States Constitution and article 2, section 8 of the Arkansas Constitution, were violated by a combination of the Commission's investigative and adjudicatory functions.

### A. Facts Relevant to the Cross-Appeal

Prior to the Commission's January 28, 2019 public hearing, Weaver moved to declare the Commission's procedures unconstitutional. Weaver's motion sought a finding that the statutes and regulations governing the Commission's procedures were unconstitutional as applied to Weaver. Specifically, she contended that they violated her rights of due process because the Commission determines probable cause, makes a settlement offer, and adjudicates the issue in a final hearing. The Commission denied Weaver's motion, and the circuit court subsequently ruled that "[t]he procedures by which the Arkansas Ethics Commission operates do not violate federal and state constitutional guarantees of due process of law." She asserts that the Commission's procedures violate federal and state constitutional rights of due process because "an entity which is the accusing entity and the negotiating entity cannot be the adjudicatory entity."

B. Merits of the Cross–Appeal

This court must review the decision of the circuit court because an administrative agency lacks the authority to rule on a constitutional argument. *Landmark Novelties, Inc. v. Ark. State Bd. of Pharmacy*, 2010 Ark. 40, 358 S.W.3d 890.

Relying on the Supreme Court of the United States, this court has recognized that the combination of investigative and adjudicative functions does not, without more, constitute a due-process violation. *C.C.B. v. Ark. Dep't of Health & Human Servs.*, 368 Ark. 540, 546, 247 S.W.3d 870, 874 (2007) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). In *C.C.B.*, this court stated,

> The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Id.*, 247 S.W.3d at 874 (quoting *Withrow*, 421 U.S. at 47). In *C.C.B.*, we stated that while the Court in *Withrow* cautioned that the dual functions of investigation and adjudication could certainly give rise to a due-process violation, it made clear that such a scheme does not automatically result in such a violation. *Id.*, 247 S.W.3d at 874. Further, an appellant, in attacking an administrative procedure on the basis of a denial of due process, has the burden of proving its invalidity. *Omni Farms, Inc. v. Ark. Power & Light Co.*, 271 Ark. 61,

65, 607 S.W.2d 363, 365 (1980). A bare allegation that a constitutional right has been invaded will not suffice. *Cloird v. State*, 357 Ark. 446, 450, 182 S.W.3d 477, 479 (2004).

Here, Weaver alleged in her motion to the Commission that "an entity which is the accusing entity and the negotiating entity cannot be the adjudicatory entity" and made bare allegations of bias and the appearance of impropriety without specific facts to support these allegations. Because she has failed to meet her burden, I conclude that Weaver has not demonstrated that she was denied due process under either the Fourteenth Amendment of the United States Constitution or article 2, section 8 of the Arkansas Constitution. Thus, I would hold that the circuit court properly ruled that the Commission's procedures do not violate federal and state constitutional guarantees of due process.

### III. *Conclusion*

The majority's holding presents a slippery slope on which present and future judicial candidates run a dangerous risk of falling into ethical violations for any alleged inadvertent omission relating to the funding of political campaigns and their advertisements. In this instance, the law is clear, and I am bound to follow it.

I would affirm the Commission's decision and reverse the circuit court's order on direct appeal. On cross-appeal, I would affirm the circuit court's ruling.

WYNNE, J., and Special Justice TIFFANY BROWN join.

*Leslie Rutledge*, Att'y Gen., by: *Kesia Morrison*, Ass't Att'y Gen., for appellant/cross-appellee.

*Jeff Rosenzweig*, for appellee/cross-appellant.