Cite as 2021 Ark. App. 361

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-20-659

| | |
|---|---|
| CRAIN FAMILY HOLDINGS, LLC, AND AUTO DEALERSHIP PARTNERS, LLC <br><br> APPELLANTS <br><br> V. <br><br> FORD MOTOR COMPANY <br> APPELLEE | Opinion Delivered September 29, 2021 <br><br> APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CV-19-1155] <br><br> HONORABLE GARY ARNOLD, JUDGE <br><br> AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Crain Family Holdings, LLC, and Auto Dealership Partners, LLC (Crain), appeal from the Saline County Circuit Court order reversing the Arkansas Motor Vehicle Commission's (the Commission's) decision finding that Ford Motor Company (Ford) violated a provision of the Arkansas Motor Vehicle Commission Act, codified at Arkansas Code Annotated section 23-112-403(a)(2)(I)(i) (Supp. 2021), and fining Ford $5,000. On appeal, Crain argues that the circuit court erred by reversing the Commission because the Commission correctly construed the statute and found a violation by Ford. The Commission has responded and concedes error. We affirm the circuit court's order.

This case arises from the sale of car dealerships. Although this case involves statutory interpretation, a brief discussion of the relevant facts is necessary. On October 31, 2018, Penske Automotive Group, Inc. (Penske), entered into an amended asset–purchase

agreement with Crain to sell two auto dealerships. The two dealerships were Landers Ford, which sold vehicles manufactured by Ford, and Landers Chrysler Dodge Jeep Ram, which sold vehicles manufactured by Fiat Chrysler Automobiles N.V. (Chrysler).

In their franchise agreements with Penske, Ford and Chrysler retained the right to grant or withhold consent of the sale of their existing dealerships. The Ford franchise agreement provided in part as follows:

> In the event the Dealer proposes a change in the ownership of 51 percent or more of the stock or transfer by sale or otherwise of the dealership business or it principal assets to any person or entity conditioned upon the Company entering into a Sales and Services Agreement with that person or entity, the Company shall have a Right of First Refusal to Purchase the stock or assets on the same terms and conditions offered or agreed to with such person, regardless of whether the proposed buyer is qualified to be a dealer.

On December 17, Chrysler approved the sale. However, on January 29, 2019, Ford informed Crain that it was exercising its right of first refusal. Ford then assigned its purchase rights to a third party, and that transaction closed in February on the same terms as negotiated by Penske and Crain.

On February 25, Crain filed a complaint with the Commission alleging that Ford had violated Arkansas Code Annotated section 23-112-403(a)(2)(I)(i) by exercising its right of first refusal. On September 3, the Commission issued a unanimous decision finding that Ford had violated the statute and fining Ford $5,000.

On October 3, Ford sought judicial review of the Commission's decision with the circuit court pursuant to the Administrative Procedure Act, Arkansas Code Annotated section 25-15-212 (Supp. 2021). On August 4, the circuit court reversed the Commission's decision and concluded that the Commission's finding that Ford had violated Arkansas Code

2

Annotated section 23-112-403(a)(2)(I) was based on an erroneous interpretation of the statute and was therefore arbitrary, capricious, and characterized by an abuse of discretion. The court stated that

> Ark. Code Ann. § 23-112-403(a)(2)(I) was enacted to protect dealers from being prohibited from selling their franchise. [It] does not protect the interests of prospective purchasers such as Crain Family Holdings, LLC and Auto Dealership Partners, LLC. When Ford exercised its right of first refusal, it virtually guaranteed the dealership's sale so that Ford's action cannot be a violation.[1]

Crain then sought judicial review of the circuit court's decision with this court. On appeal, Crain argues that the Commission correctly interpreted section 23-112-403(a)(2)(I)(i) and found that Ford had violated the statute.

As with all appeals from administrative decisions under the Administrative Procedure Act, either the circuit court or the appellate court may reverse the agency decision if it concludes that the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error or law; (5) not supported by substantial evidence of record; or (6) arbitrary, capricious, or characterized by abuse of discretion. Ark. Code Ann. § 25-15-212(h); *Ark. Ethics Comm'n v. Weaver*, 2021 Ark. 38, 617 S.W.3d 680.

Our review on appeal is directed toward the decision of the administrative agency rather than the decision of the circuit court. *Id.* However, we afford no deference to an

---

[1]The circuit court additionally found that Crain had standing to file its complaint against Ford with the Commission. However, standing is not an issue on appeal.

3

agency's statutory interpretation; our review is de novo. *Myers v. Yamato Kogyo Co., Ltd.*, 2020 Ark. 135, 597 S.W.3d 613.

The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Taylor v. Biba*, 2014 Ark. 22. An unambiguous statute will be interpreted solely on the clear meaning of the text. *Myers*, 2020 Ark. 135, 597 S.W.3d 613. However, a statute is considered ambiguous if it is open to more than one construction. *Pulaski Cnty. v. Ark. Democrat-Gazette, Inc.*, 370 Ark. 435, 260 S.W.3d 718 (2007).

We now turn to the statute at issue. Arkansas Code Annotated section 23–112–403(a)(2)(I)(i) makes it unlawful for a manufacturer,

> (i) Notwithstanding the terms of any franchise agreement, to fail to give effect or attempt to prevent any sale or transfer of a dealer, dealership, or franchise or interest therein, or management thereof, provided that the manufacturer or distributor has received sixty (60) days' written notice prior to the transfer or sale, and unless:
>
> > *(a)* The transferee does not meet the criteria generally applied by the manufacturer in approving new motor vehicle dealers or agree to be bound by all the terms and conditions of the dealer agreement, and the manufacturer so advises its dealer within sixty (60) days of receipt of the notice; or
> >
> > *(b)* It is shown to the commission after a hearing that the result of such a sale or transfer will be detrimental to the public or the representation of manufacture or distributor.

Crain argues that the statute prohibits a manufacturer from preventing "*any*" sale or transfer of a dealership; thus, Ford violated the statute when it did not approve the sale of Landers Ford to Crain. It also points to the statute's phrase "notwithstanding the terms of any franchise agreement" and argues that the statute thus disregards all provisions in manufacturer–dealer contracts.

Ford and the Commission assert that the statute protects only a dealer's ability to sell or transfer its interest in a dealership and that it does not guarantee a prospective purchaser's right to buy a dealership. They point out that the statute includes the terms "sale" and "transfer" and that it does not include terms such as "purchase" or "acquisition." They further note that the plain language of the statute does not bar a manufacturer's use of a right of first refusal.

After reviewing the record and arguments of the parties, we determine that each interpretation is reasonable. Accordingly, we conclude that the statute is ambiguous, and we must engage in statutory interpretation.

When a statute is ambiguous, this court must interpret it according to legislative intent, and our review becomes an examination of the whole act. *Simpson v. Cavalry SPV I, LLC*, 2014 Ark. 363, 440 S.W.3d 335. In reviewing the act in its entirety, this court will reconcile provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. *Id.* The language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that throw light on the subject can be used by the court to construe legislative intent. *Burcham v. City of Van Buren*, 330 Ark. 451, 954 S.W.2d 266 (1997). Further, though the title of an act is not part of the law, it may be referred to if it helps ascertain the intent of the General Assembly. *See Williams v. Little Rock Sch. Dist.*, 347 Ark. 637, 643, 66 S.W.3d 590, 594 (2002). Moreover, where ambiguity exists, the agency's interpretation will be one of our many tools used to provide guidance. *Myers*, 2020 Ark. 135, 597 S.W.3d 613.

The legislative intent of the Arkansas Motor Vehicle Commission Act is found in Arkansas Code Annotated section 23-112-102 (Supp. 2021):

(a) The General Assembly finds and declares that the distribution and sale of motor vehicles in Arkansas vitally affects the general economy of the state and the public interest and the public welfare.

(b) The General Assembly further finds and declares that it is necessary, in the exercise of its police power, to regulate and to license motor vehicle manufacturers, factory branches and divisions, distributors, distributor branches and divisions, distributor representatives, and new motor vehicle dealers doing business in Arkansas in order to:

(1) Prevent frauds, unfair practices, discrimination, impositions, and other abuses upon the citizens of Arkansas;

(2) Avoid undue control of the independent motor vehicle dealer by motor vehicle manufacturing and distributing organizations;

(3) Foster and keep alive vigorous and healthy competition;

(4) Prevent the creation or perpetuation of monopolies;

(5) Prevent the practice of requiring the buying of special features, accessories, special models, appliances, and equipment not desired by a motor vehicle dealer or the ultimate purchaser;

(6) Prevent false and misleading advertising;

(7) Promote and keep alive a sound system of distribution of motor vehicles to the public; and

(8) Promote the public safety and welfare.

The relevant section in this case, section 23-112-403, is titled "Manufacturers, distributors, second-stage manufacturers, importers, or converts—Definition[,]" and it sets forth numerous provisions protecting a dealer from a manufacturer's coercion, prejudice, and undue control. *See, e.g.*, Ark. Code Ann. § 23-112-403(a)(1)(C) (making it unlawful for a manufacturer to coerce or attempt to coerce any motor vehicle dealer to order for any

6

person any parts, accessories, equipment, machinery, tools, appliances, or any commodity whatsoever); Ark. Code Ann. § 23-112-403(a)(2)(B)(i)*(c)* (making it unlawful for a manufacturer to do an act prejudicial to the motor vehicle dealer by threatening to cancel a franchise or a contractual agreement existing between the manufacturer, distributor, distributor branch or division, or factory branch or division and the motor vehicle dealer); Ark. Code Ann. § 23-112-403(a)(2)(J)(i) (making it unlawful for a manufacturer to prevent, attempt to prevent, or refuse to honor the succession to a dealership by any legal heir or devisee under the will of dealer or under the laws of descent and distribution applicable to the estate unless certain circumstances apply); Ark. Code Ann. § 23-112-403(a)(5)(A) (making it unlawful for a manufacturer to unreasonably reduce a motor vehicle dealer's area of sales effectiveness, trade area, or similar designation without giving a notice of at least thirty days of the proposed reduction).[2]

Having reviewed the Act and reconciled its provisions to make them consistent and harmonious, we hold that the Commission erred by finding that Ford violated Arkansas Code Annotated section 23-112-403(a)(2)(I)(i) when it exercised its right of first refusal in its contract with Penske. The legislative intent expresses the need to oversee the manufacturer-dealership relationship, and section 403 provides protections from manufacturers for motor-vehicle dealers, not prospective purchasers. In this case, Ford did not prohibit Penske from selling the Ford dealership—the sale closed in February 2019 on

---

[2]While the parties cite cases from other jurisdictions as support for their own interpretations, none of those cases involved the interpretation of identical language found in our own statute; therefore, they are not persuasive in this court's interpretation. *See also Simpson*, 2014 Ark. 363, 440 S.W.3d 335.

the same terms as Crain had negotiated. In exercising its contractual right of first refusal, Ford merely prevented Crain from purchasing the Ford dealership. The statute does not contain a provision specifically prohibiting a contractual right of first refusal. The Commission thus erred in finding a violation by Ford, and the circuit court properly reversed the decision. Accordingly, we reverse the Commission's decision, and we affirm the circuit court's order.

Commission's decision reversed; circuit court's order affirmed.

VIRDEN and HIXSON, JJ., agree.

*Quattlebaum, Grooms & Tull PLLC*, by: *Michael N. Shannon* and *Michael B. Heister*, for appellants.

*Mitchell, Williams, Selig, Gates & Woodyard P.L.L.C.*, by: *Megan D. Hargraves*; *Baker & Hostetler LLP*, by: *Elizabeth McNellie*, *pro hac vice*; and *Thompson, Coe, Cousins & Irons, LLP*, by: *Michael W. Eady*, *pro had vice*, for separate appellee Ford Motor Company.

*Leslie Rutledge*, Att'y Gen., by: *Juliane Chavis*, Ass't Att'y Gen., for separate appellee Arkansas Motor Vehicle Commission.