Cite as 2021 Ark. 187

# SUPREME COURT OF ARKANSAS

**No.** CV–19–62

|  |  |
|---|---|
| | **Opinion Delivered:** October 21, 2021 |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES CRIMES AGAINST CHILDREN DIVISION<br><br>APPELLANT<br><br>V.<br><br>STEVEN D. MITCHELL<br><br>APPELLEE | APPEAL FROM THE IZARD COUNTY CIRCUIT COURT [NO. 33CV-18-77]<br><br>HONORABLE MAUREEN HARROD, JUDGE<br><br><u>ADMINISTRATIVE LAW JUDGE DECISION AFFIRMED; CIRCUIT COURT ORDER REVERSED; COURT OF APPEALS OPINION VACATED</u>. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant, the Arkansas Department of Human Services (DHS), appeals the Izard County Circuit Court's order reversing the DHS administrative law judge's (ALJ's) determination that allegations of child maltreatment made against appellee, Steven Mitchell, were true and that Mitchell should be listed on the Arkansas Child Maltreatment Central Registry. For reversal, DHS argues that (1) the ALJ's decision was supported by substantial evidence, (2) DHS did not violate Mitchell's due process rights, and (3) Mitchell did not suffer prejudice under applicable Arkansas law. We granted Mitchell's petition for review after the court of appeals reversed the circuit court's order and affirmed the ALJ's order. We affirm the ALJ's decision and reverse the circuit court's order.

Mitchell was employed at Melbourne High School as an agricultural teacher from 1999 to 2004. On June 4, 2004, the Arkansas State Police Crimes Against Children Division (CACD)

received a report that Mitchell had sexually abused B.T. Jannette Cooper investigated the report for the CACD. During the investigation, B.T. and several other students alleged that Mitchell exposed his penis and asked them to expose their penises on various Future Farmers of America trips. B.T. was about fourteen or fifteen years old at the time of the offenses.[1] Some of the incidents occurred in other states.

The investigative file includes a summary of a statement that B.T. gave to Cooper. According to the summary, the interview was recorded but the tape stopped about halfway through the interview. The summary indicates that B.T. initially denied any inappropriate activity but later in the interview admitted that Mitchell had exposed himself to him and other boys and that B.T. had exposed himself to Mitchell. B.T. reportedly alleged that Mitchell grabbed his penis, and made him grab Mitchell's erect penis, so that they could "jerk each other off." The investigative file also contains summaries of statements made by other students, but, in violation of DHS policy, DHS failed to retain audio recordings of the statements. The file contained no documentation that Mitchell was charged with a crime, but it was noted that he had been arrested and charged "with a number of sexual offenses."

Ultimately, DHS entered multiple true findings of abuse involving different children. With respect to B.T., the investigation concluded on June 18, 2004. DHS concluded that Mitchell had sexually abused B.T. through indecent exposure and sexual contact. The investigator cited Mitchell's refusal to give a statement, the criminal charges, and the statements obtained from the students as the bases for closing the investigation with a determination that the allegations of sexual abuse were true. The final DHS report to the prosecuting attorney noted that, on the advice of his attorney, Mitchell refused to give a statement. In violation of Arkansas Code Annotated section 12-

---

[1]Mitchell's appeal of the ALJ's determination regarding another student is submitted today in a companion case. *See Ark. Dep't of Human Servs. v. Mitchell*, 2021 Ark. 188 (CV-19-63).

2

12–512(c)(1)(A)(i), Mitchell was not notified of the true findings. Consequently, he was unaware of his right to request an administrative hearing pursuant to Arkansas Code Annotated section 12–12–512(c)(1)(C)(ii). Nevertheless, and unbeknownst to him, Mitchell's name was placed onto the Child Maltreatment Central Registry. Mitchell was eventually charged in state and federal courts with various criminal offenses. On August 23, 2005, Mitchell entered a negotiated guilty plea in the Izard County Circuit Court to one count of second-degree sexual assault with respect to B.T. and one count of second-degree sexual assault with respect to J.C. Other state charges were dropped, and Mitchell was sentenced to a $2,500 fine and probation. At that time, Mitchell registered as a sex offender and was assigned to level three community notification. After a 2008 jury trial on Mitchell's federal charges, the federal court dismissed four counts against Mitchell, and the jury found him not guilty of one other count.

About thirteen years after the DHS true findings, Mitchell requested a sex-offender-rating reassessment. During that reassessment, DHS generated and sent Mitchell the notice of the true finding relating to B.T. Although the true finding was entered on June 18, 2004, the notice document that Mitchell received was dated December 27, 2017. According to the notice, Mitchell had thirty days to request an administrative hearing; otherwise, his name would be placed on the maltreatment registry. Mitchell requested a hearing.

The administrative hearing was held on April 18, 2018. It concerned all the true findings and not just those regarding B.T. Before the hearing, Mitchell filed a motion to exclude the witness-statement summaries. Mitchell also objected to the use of his guilty plea and moved for declaratory judgment. In the filings, Mitchell argued that there was no basis for the true findings and that the interview summaries must be excluded. He also alleged due process violations. According to Mitchell, due process requires that he have the opportunity to be heard at a meaningful time and in a meaningful manner. He claimed that because the meaningful time was fourteen years earlier,

3

DHS's action violated his due process rights. Mitchell further asserted that the violations caused him to enter a coerced guilty plea. He sought the reversal of the true finding and the removal of his name from the maltreatment registry. The ALJ considered the motions and objections at the outset of the hearing but denied them. The ALJ did remark that he did not have "authority to make any rulings on constitutional issues."

At the administrative hearing, DHS's case in support of the true findings included Mitchell's testimony and documentary evidence. The documents included B.T.'s interview summary, summaries of other interviews, Mitchell's criminal judgment and disposition order, and his sex-offender-screening assessment. Mitchell introduced evidence that DHS procedures had not been followed. This included the failure to maintain audio recordings of the interviews and the use of inappropriate interviewing techniques. After the hearing, the ALJ concluded that the CACD incorrectly made a finding of indecent exposure. However, the ALJ determined that the CACD made a correct finding that Mitchell sexually abused B.T. by sexual contact, that the child-maltreatment allegations were true, and that Mitchell's name should be placed on the child-maltreatment registry. Mitchell moved for reconsideration and argued that the ALJ improperly considered his guilty plea and that Arkansas Code Annotated section 12-18-619 affords immunity for statements made in a sex-offender screening. He also reiterated his constitutional arguments. The ALJ denied Mitchell's motion for reconsideration, and Mitchell appealed to the circuit court. The circuit court concluded that the agency decision was based on unlawful procedures and a violation of Mitchell's due process rights. Therefore, the circuit court reversed the agency determination. After the circuit court denied its motion for reconsideration, DHS appealed, and the court of appeals reversed the circuit court's order and reinstated the agency's true finding and the placement of Mitchell's name on the maltreatment registry.

4

We granted Mitchell's petition for review. We consider the appeal as though it was originally filed in this court. *Calhoun v. Area Agency on Aging of Se. Ark.*, 2021 Ark. 56, 618 S.W.3d 137. Our review on appeal is directed toward the decision of the administrative agency rather than the decision of the circuit court. *Hurd v. Ark. Oil & Gas Comm'n*, 2020 Ark. 210, 601 S.W.3d 100. As with all appeals from administrative decisions under the Administrative Procedure Act, either the circuit court or the appellate court may reverse the agency decision if it concludes that the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error or law; (5) not supported by substantial evidence of record; or (6) arbitrary, capricious, or characterized by abuse of discretion. *Ark. Ethics Comm'n v. Weaver*, 2021 Ark. 38, 617 S.W.3d 680; Ark. Code Ann. § 25-15-212(h) (Supp. 2021).

At the time of the DHS investigation in 2004, the Arkansas Child Maltreatment Act defined sexual abuse to include sexual contact by a caretaker to a person younger than eighteen years old. Ark. Code Ann. § 12-12-503(17)(C)(i) (Repl. 2003). Sexual contact included "any act of sexual gratification involving the touching, directly or through the clothing, of the sex organs . . . of a person[.]" Ark. Code Ann. § 12-12-503(18)(A). A "caretaker" was defined as any person, including a public-school employee, who was entrusted with the care of a child. Ark. Code Ann. § 12-12-503(3). A "child" was defined as an individual from birth to the age of eighteen. Ark. Code Ann. § 12-12-503(5).

In 2005, when Mitchell entered his guilty pleas, a person committed sexual assault in the second degree if the person "[e]ngaged in sexual contact with another person who is less than eighteen (18) years of age" and the person was, among other things, "an employee in the minor's school or school district." Ark. Code Ann. § 5-14-125(4)(A)(iii) (Supp. 2003). Like the Child

Maltreatment Act, the criminal code defined "sexual contact" as "any act of sexual gratification involving the touching, directly or through the clothing, of the sex organs . . . of a person[.]" Ark. Code Ann. § 5-14-101(9) (Supp. 2003).

We turn now to DHS's points on appeal. DHS first argues that the ALJ's finding was supported by substantial evidence. As a threshold matter, we must consider Mitchell's contention that we lack jurisdiction to consider this argument because the circuit court did not address the sufficiency of the evidence at all in its order. This argument is misplaced. An agency decision may be set aside if it is not supported by substantial evidence. Ark. Code Ann. § 25-15-212(h). Our review is directed to the decision of the administrative agency, not of the circuit court. *Hurd*, 2020 Ark. 210, 601 S.W.3d 100. Therefore, we have jurisdiction to consider the argument.

Assured of our jurisdiction, we turn to the merits of DHS's argument that substantial evidence supports the ALJ's finding. Substantial evidence is evidence that is valid, legal, and persuasive and that a reasonable mind might accept to support a conclusion and force the mind to pass beyond speculation and conjecture. *Teston v. Ark. State Bd. of Chiropractic Exam'rs*, 361 Ark. 300, 206 S.W.3d 796 (2005). We review the entire record and give the evidence its strongest probative force in favor of the agency's decision. *Ark. Pub. Emps. Ret. Sys. v. Taylor*, 2013 Ark. 37, 425 S.W.3d 738. The question is not whether the evidence would have supported a contrary finding but whether it would support the finding that was made. *Id*. To establish an absence of substantial evidence to support the decision, the challenging party must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusion. *Weaver*, 2021 Ark. 38, 617 S.W.3d 680. When the agency's decision is supported by substantial evidence, it automatically follows that the decision cannot be classified as arbitrary and capricious. *Wright v. Ark. State Plant Bd.*, 311 Ark. 125, 842 S.W.2d 42 (1992).

In this instance, the ALJ considered the summary of B.T.'s statement indicating that B.T. and Mitchell had touched each other's penises. He noted that B.T.'s description of Mitchell's penis as being erect and their discussion of masturbation supported a finding that the touching was for sexual gratification. The evidence before the ALJ also included Mitchell's sex-offender assessment, which reported that Mitchell "admitted to sexual contact with two male students (who he was convicted for)." Finally, Mitchell pled guilty to second-degree sexual assault, and he acknowledged during the administrative hearing that one of those convictions related to his conduct with B.T. The ALJ noted that by virtue of this guilty plea, Mitchell admitted that the touching was for sexual gratification. At the time, B.T. was less than eighteen years old, and Mitchell was approximately twenty-eight years old, or older, and a caretaker as defined by the Arkansas Child Maltreatment Act. Thus, the evidence was not "so nearly undisputed that fair-minded persons could not reach [the agency's] conclusion." *Weaver*, 2021 Ark. 38, at 4, 617 S.W.3d at 683. Instead, the evidence was enough that "a reasonable mind might accept to support a conclusion and force the mind to pass beyond speculation and conjecture." *Teston*, 361 Ark. at 305, 206 S.W.3d at 799.

Although the evidence before the ALJ was sufficiently persuasive, Mitchell claims that the ALJ should not have considered the witness statements, his guilty plea, or the statements that he made in connection with his sex-offender assessment. Essentially, he claims that the evidence was not "valid" and "legal." *Id.*, 206 S.W.3d at 799. First, Mitchell challenged the use of the witness summaries as a violation of various provisions of the Arkansas Rules of Evidence. However, it is well settled that the rules of evidence need not be strictly adhered to in an administrative proceeding. *Ark. Dep't of Hum. Servs. v. A.B.*, 374 Ark. 193, 286 S.W.3d 712 (2008). It is the prerogative of the agency to decide what weight to accord the evidence. *Reed v. Arvis Harper Bail Bonds, Inc.*, 2010 Ark. 338, 368 S.W.3d 69. Although the ALJ overruled Mitchell's objection to the summaries' use, he recognized that recordings of the actual statements were missing. He expressed concerns with

7

the summary of B.T.'s statement and said that he would give the statement summaries the weight they were due. It is clear that the ALJ did not treat the summaries as conclusive proof of abuse but only as evidence to be evaluated. Therefore, the ALJ properly considered the statement summaries.

Next, Mitchell argued that the ALJ could not use his guilty plea as evidence for the agency's determination in the administrative proceeding. He claims that his criminal case was not fully litigated and that principles of collateral estoppel preclude consideration of his plea. Before the circuit court, Mitchell bolstered this argument by noting that the court of appeals had previously rejected his guilty pleas as a basis for finding his own children dependent-neglected. For estoppel purposes, a guilty plea in a criminal case is not equivalent to a criminal conviction that has been actually litigated. *Bradley Ventures v. Farm Bureau Mut. Ins. Co. of Arkansas*, 371 Ark. 229, 264 S.W.3d 485 (2007). Even in cases of a trial, the common-law rule is that a judgment in a criminal prosecution is not a bar to a subsequent civil proceeding founded on the same facts or proof of anything other than its rendition. *Zinger v. Terrell*, 336 Ark. 423, 985 S.W.2d 737 (1999). In *Zinger*, we overruled the common law with respect to a murder conviction and said that "a defendant who has been adjudged guilty of murdering a person is collaterally estopped from relitigating the same issue in a later civil proceeding to inherit or take the victim's property." 336 Ark. 430, 985 S.W.2d 741. We did not address the issue of collateral estoppel for other types of convictions. But the mere fact that Mitchell is not estopped from relitigating the issue of his guilt in a civil proceeding does not mean that his guilty plea may not be considered at all in an administrative hearing. In fact, Mitchell was not estopped from contesting the true finding. The ALJ did not treat Mitchell's plea as conclusive proof that he abused B.T. Instead, the fact that Mitchell pled guilty to a criminal offense involving B.T. was part of the evidence that the ALJ considered. Additionally, the court of appeals decision in *Arkansas Department of Health and Human Services v. Mitchell*, 100 Ark. App. 45, 263 S.W.3d 574 (2007), does not compel a conclusion that the ALJ erred in considering Mitchell's

8

guilty plea. There, the court of appeals determined that even if Mitchell's guilty plea for the sexual abuse of other children conclusively established that he did in fact abuse other children, it did not, standing alone, establish that the circuit court erred in finding that the State failed to meet its burden of proving that Mitchell's own children were dependent-neglected. Because that decision concerned the probative value of Mitchell's guilty pleas as they related to his own children, it has no application here. Thus, the ALJ did not err in considering Mitchell's guilty plea relating to his conduct with B.T.

Finally, contrary to Mitchell's contention, the ALJ did not err in considering the statements that Mitchell made in his sex-offender assessment. Mitchell stresses that Arkansas Code Annotated section 12-12-917(b)(4)(B) provides immunity for statements made in the sex–offender-assessment process. Although true, that section references Arkansas Code Annotated sections 16-43-601 et seq., making clear that the immunity granted is immunity in criminal proceedings, not in a DHS administrative hearing. Therefore, Mitchell's statements were properly considered. Taken as a whole, the evidence that the ALJ relied on was substantial, valid, and legal.

DHS next argues that Mitchell was not deprived of due process because he was given a hearing.[2] We have held that parties appearing before an administrative agency are entitled to due process. *A.B.*, 374 Ark. 193, 286 S.W.3d 712. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319 (1976). Due process requires at a minimum that a person be given notice and a reasonable opportunity for a hearing before he or she is deprived of property by state action. *Owings v. Econ. & Med. Servs.*, 302 Ark. 475, 790 S.W.2d 438 (1990). Determining what process is due involves

---

[2]Although Mitchell claims that DHS failed to preserve its due process argument, we disagree. Due process was raised at the administrative hearing, and in Mitchell's appeal to the circuit court, DHS argued that he received due process.

the consideration of three factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *Goldberg v. Kelley*, 397 U.S. 254 (1970). However, the Due Process Clause is not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property. *Daniels v. Williams*, 474 U.S. 327 (1986).

In this instance, Mitchell does not challenge the specific procedures that DHS has provided for those who wish to contest a true finding. Instead, he argues that those procedures were not followed. According to Mitchell, the fact that he was not notified for fourteen years after the true finding was a violation of his due process rights.

At the time of the true finding, the Child Maltreatment Act required that the subject be notified. Ark. Code Ann. § 12–12–512(c)(1)(A)(i). Although there was no statutory deadline for the State to provide Mitchell notification of the true finding, DHS concedes that "fourteen years was objectively late." Regardless, DHS contends that Mitchell received due process because, even though his name was placed on the maltreatment registry before he was notified, Mitchell received an adequate postdeprivation remedy in the form of a hearing. There is no question that Mitchell's statutory rights were violated in 2004 when his name was placed on the maltreatment registry in the absence of the statutorily required notice. However, the agency decision at issue was made in 2018, and the question before us is whether that decision was made upon unlawful procedure or in violation of statutory or constitutional provisions. *Weaver*, 2021 Ark. 38, 617 S.W.3d 680. We conclude that it was not. Although DHS's 2004 failures are inexcusable, the 2018 agency decision was made after Mitchell had notice and an opportunity to be heard. There is no evidence that the decision to place Mitchell's name on the maltreatment registry before proper notification is anything

10

other than negligence on the part of DHS. Even if DHS acted intentionally, the United States Supreme Court has held that due process is not violated when there is a meaningful postdeprivation remedy for the loss. *Hudson v. Palmer*, 468 U.S. 517 (1984). Here, Mitchell received a meaningful hearing. As DHS notes, Mitchell was successful in overturning multiple true findings. Accordingly, the agency decision that we are reviewing today was not made upon unlawful procedure or in violation of statutory or constitutional procedures.[3]

Finally, DHS contends that Mitchell has suffered no prejudice that would warrant reversing the ALJ's findings. Mitchell was successful in convincing the ALJ to reverse the true finding that he abused B.T. through indecent exposure. DHS also observes that Mitchell testified that there was a "good chance" he "would have lost the hearing" if it had been held fourteen years earlier. Arkansas Code Annotated section 25-15-212(h) provides that a reviewing court may reverse or modify the agency decision if the "substantial rights of the petitioner have been prejudiced[.]" Here, Mitchell suffered no prejudice. Mitchell's guilty plea and the statements that he made during his sex–offender assessment had the same evidentiary value in 2018 as they did fourteen years ago. Moreover, Mitchell was partially successful in that the ALJ found insufficient evidence to support the agency's determination that he had sexually abused B.T. through indecent exposure. Indeed, Mitchell conceded at the hearing that he would have fared worse if he had received a timely hearing in 2004. Therefore, Mitchell has not demonstrated that the ALJ's decision should be reversed on the basis of prejudice.[4]

---

[3]The fact that Mitchell's constitutional rights were not violated does not mean that he is without recourse for any injury that he sustained due to DHS's negligence. As the U.S. Supreme Court has noted, the enactment of tort-claim statutes reflects the view that injuries caused by negligence should generally be redressed. *Daniels*, 474 U.S. 327; *see also* Ark. Code Ann. §§ 19-10-201 et seq. (establishing the Arkansas State Claims Commission).

[4]Mitchell also alleges that he did not know of the DHS investigation when he entered his guilty pleas because the prosecuting attorney did not disclose that information to him, and he

In sum, DHS should have been more diligent in following its own statutory-notice procedures. Its failure to do so violated Mitchell's statutory rights when DHS placed his name on the maltreatment registry in 2004. However, those failures do not vitiate the 2018 agency decision that we review today. Substantial evidence supports that decision. Further, before the decision was made, Mitchell received the required notice, he had an opportunity for a meaningful hearing, and his substantial rights were not prejudiced.

Administrative law judge decision affirmed; circuit court order reversed; court of appeals decision vacated.

*Ellen K. Howard*, Office of Chief Counsel, for appellant.

*Steven D. Mitchell*, pro se appellee.

---

suggests that he would not have pled guilty had he known of these facts. We note that the remedy to challenge a guilty plea is by a petition for writ of error coram nobis. *See Scott v. State*, 2017 Ark. 199, 520 S.W.3d 262 (holding that evidence withheld by the State could be the basis of a challenge to a guilty plea in a coram nobis proceeding).